1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - -X
3  UNITED STATES OF AMERICA,     : 18-CR-439 (MKB)
                                  :
4           Plaintiff,           :
                                  :
5        -against-               : United States Courthouse
                                  : Brooklyn, New York
6  TIMOTHY LEISSNER,             :
                                  :
7           Defendant.           : Tuesday, August 28, 2018
                                  : 10:30 a.m.
8  - - - - - - - - - - - - - - - -X

9

10     TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING (REDACTED)
          BEFORE THE HONORABLE MARGO K. BRODIE
11            UNITED STATES DISTRICT JUDGE

12

13               A P P E A R A N C E S:

14 For the Government:        RICHARD P. DONOGHUE, ESQ.
                              UNITED STATES ATTORNEY
15                            Eastern District of New York
                              271 Cadman Plaza East
16                            Brooklyn, New York 11201
                              BY:  JACQUELYN KASULIS, ESQ.
17                                 DREW ROLLE, ESQ.
                                   Assistant United States Attorney
18
   For the Defendant:        FREEH, SPORKIN & SULLIVAN, LLP
19                            2550 M Street Northwest
                              Washington, D.C. 20037
20                            BY:  ROBERT O'NEILL, ESQ.
                                   HONORABLE EUGENE SULLIVAN, ESQ.
21                                 EUGENE SULLIVAN, II, ESQ.

22 Court Reporter:           DAVID R. ROY, RPR
                              225 Cadman Plaza East
23                            Brooklyn, New York 11201
                              drroyofcr@gmail.com
24
   Proceedings recorded by Stenographic machine shorthand,
25 transcript produced by Computer-Assisted Transcription.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

1              P R O C E E D I N G S

2                    --ooOoo--

3              THE COURTROOM DEPUTY:  Criminal cause for

4    pleading, Docket Number 18-CR-439, USA versus John Doe.

5              Counsel, please state your appearances for the

6    record.

7              MS. KASULIS:  On behalf of the United States,

8    Jacquelyn Kasulis and Drew Rolle for the U.S. Attorney's

9    Office in the Eastern District of New York.

10             THE COURT:  Good morning, Counsel.

11             MR. ROLLE:  Good morning, Judge.

12             MS. KASULIS:  We also have Jennifer Ambuehl and

13   Mary Ann McCarthy and Woo Lee, W-O-O; L-E-E, from the Money

14   Laundering and Asset Recovery Section of the Criminal

15   Division.  And then we have Kate Nielsen from the Fraud

16   Section of the Criminal Division.

17             THE COURT:  Okay.  Thank you.

18             MS. KASULIS:  Good morning, Your Honor.

19             THE COURT:  Good morning, everyone.

20             MR. O'NEILL:  Robert O'Neill for the Defendant Tim

21   Leissner.

22             THE COURT:  Good morning.

23             Good morning, Mr. Leissner.

24             THE DEFENDANT:  Good morning, Your Honor.

25             MR. O'NEILL:  Also present are two attorneys that

Proceedings                                         3

1    I am also working with, Eugene Sullivan and Eugene

2    Sullivan, II.

3              MR. SULLIVAN:  Good morning.

4              MR. SULLIVAN, II:  Good morning, Your Honor.

5              THE COURT:  Good morning to you all.

6              And as I indicated, you can remain seated

7    throughout the proceedings.

8              MR. O'NEILL:  Sure.  Thank you.

9              THE COURT:  Okay.  As I understand it,

10   Mr. Leissner -- is that how you pronounce your name?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  -- that you are going to waive

13   indictment and plead guilty to a two-count information.

14             Is that correct?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  All right.  So I am going to have her

17   administer the oath to you.

18             THE COURTROOM DEPUTY:  Would you please raise your

19   right hand.

20   T I M   L E I S S N E R,

21             called as a witness having been

22             first duly sworn/affirmed, was examined and

23             testified as follows:

24             THE COURTROOM DEPUTY:  Please state and spell your

25   name for the record.

```
                       Proceedings                    4
```

1          THE DEFENDANT:  It's Tim Leissner, T-I-M,

2     L-E-I-S-S-N-E-R.

3          THE COURT:  Thank you.  Please be seated,

4     Mr. Leissner.

5          THE DEFENDANT:  Thank you, Your Honor.

6          THE COURT:  I want to make sure you understand

7     that now that you are under oath, if you answer any of my

8     questions falsely, you could face another prosecution for

9     perjury or for making a false statement.

10          Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  And how old are you,

13     Mr. Leissner?

14          THE DEFENDANT:  Forty-eight.

15          THE COURT:  All right.  How far did you get in

16     school?

17          THE DEFENDANT:  I got a Ph.D. at the end, a

18     doctorate.  I have a Master's Degree and Bachelor's in

19     business.

20          THE COURT:  All right.  So you are quite educated.

21          And you speak and understand English, correct?

22          THE DEFENDANT:  Yes, I do, Your Honor.

23          THE COURT:  Counsel, have you been able to

24     communicate with your client in English?

25          MR. O'NEILL:  Yes, Your Honor.

```
                        Proceedings                    5
```

1              THE COURT:  You do not have to stand.  I know it

2    is --

3              MR. O'NEILL:  Yes, Your Honor.

4              THE COURT:  -- the natural reaction, but you can

5    remain seated in the courtroom unless there is a jury.

6              MR. O'NEILL:  Thank you.

7              THE COURT:  Mr. Leissner, are you currently or

8    have you recently been under the care of a doctor or a

9    psychiatrist?

10             THE COURTROOM DEPUTY:  No, Your Honor, I have not.

11             THE COURT:  Are you currently or have you recently

12   been treated or hospitalized for any type of addiction,

13   including drug or alcohol addiction?

14             THE COURTROOM DEPUTY:  No, Your Honor, I have not.

15             THE COURT:  Have you taken any drugs, medicine, or

16   pills --

17             THE DEFENDANT:  No.

18             THE COURT:  -- or had any alcoholic beverages

19   within the last 48 hours?

20             THE COURTROOM DEPUTY:  No, Your Honor, I have not

21   even had a drink.

22             THE COURT:  Not even a drink?

23             THE DEFENDANT:  Right.

24             THE COURT:  Okay.  Is your mind clear today?

25             THE DEFENDANT:  Yes, Your Honor.

Proceedings                          6

1        THE COURT:  And do you understand what is

2   happening today?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  Okay.  You have been charged in a

5   two-count information.

6        Have you had a chance to review that information?

7        THE DEFENDANT:  Yes, Your Honor, I have with my

8   counsel.

9        THE COURT:  And do you understand that the charges

10  are conspiracy to violate the Foreign Corrupt Practices Act

11  and conspiracy to commit money laundering?

12        THE DEFENDANT:  Yes, Your Honor, I understand.

13        THE COURT:  Because these are felony crimes, you

14  have a constitutional right to be charged by way of an

15  indictment by a grand jury, but you can waive that right and

16  instead consent to be charged by the United States Attorney

17  by way of an information.  Instead of an indictment, these

18  felony charges against you have been brought by way of an

19  information by the U.S. Attorney's Office.  Unless you waive

20  indictment, you may not be charged with a felony unless a

21  grand jury finds and returns an indictment and finds that

22  there is probable cause to charge you.  If you do not waive

23  indictment, the Government may present the case to the

24  grand jury and the grand jury, they might or they might not

25  indict you.  A grand jury, as I am sure your lawyers have

Proceedings                    7

1    explained to you, is comprised of at least 15, but not more

2    than 23 persons and at least 12 of them would have to vote

3    to indict you.

4              Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  They would have to find that there is

7    probable cause to believe that you have committed the two

8    crimes.

9              THE DEFENDANT:  Yes, Your Honor, and I understand.

10             THE COURT:  If you waive indictment by the

11   grand jury, the case will proceed against you by way of the

12   information charged by the U.S. Attorney as though you had

13   been indicted.

14             Have you discussed the matter of waiving your

15   right to indictment by a grand jury with your attorneys?

16             THE DEFENDANT:  Yes, Your Honor, I have.

17             THE COURT:  And do you understand your right to

18   have an indictment returned by the grand jury?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Have any threats or promises been made

21   to you to induce you to waive indictment?

22             THE DEFENDANT:  No, Your Honor, they have not.

23             THE COURT:  Do you wish to waive your right to

24   indictment by a grand jury?

25             THE DEFENDANT:  Yes, Your Honor.

Proceedings                                              8

1          THE COURT:  Counsel, do you see any reason why
2   your client should not waive indictment?
3          MR. O'NEILL:  No, Your Honor.
4          THE COURT:  Okay.  I have before me a Waiver of
5   Indictment.  May I have the parties please sign it.
6          There you go.
7          MS. KASULIS:  We have it --
8          THE COURT:  Is there one that is already signed?
9          MS. KASULIS:  We do have one, Your Honor.
10         THE COURT:  Okay.  Can you show it to Mr. Leissner
11  so I can confirm that that is actually his signature?
12         THE DEFENDANT:  Yes, Your Honor, that's my
13  signature.
14         THE COURT:  Okay.  So I will sign this order.
15         I find that the Waiver of Indictment is knowingly
16  and voluntarily made and I accept it.
17         Here you go.
18         So now I am going to arraign you on the charges in
19  the information.  I have already told you what they are, the
20  two conspiracy charges, and you have informed me,
21  Mr. Leissner, that you have reviewed a copy of the
22  information with your attorney.
23         Counsel, would you like me to read the information
24  to your client or do you waive the read-in?
25         MR. O'NEILL:  Your Honor, we waive the read-in.

Proceedings                                          9

1          THE COURT:  Okay.

2          Now, Mr. Leissner, because of your wish to plead

3     guilty to the two counts of the information, I need to ask

4     you a number of questions.  This is a serious decision and I

5     need to ensure myself that you are making this decision

6     knowingly and voluntarily.  I am going to also explain

7     certain rights to you.  With regard to the questions if at

8     any time you do not understand my questions, let me know and

9     I will reword the question.  If at any time you need to

10    consult with your lawyers, let me know and I will take a

11    break for you to do that.

12         THE DEFENDANT:  Thank you, Your Honor.

13         THE COURT:  I remind you that you are still under

14    oath.

15         THE DEFENDANT:  Yes.

16         THE COURT:  And so you must answer my questions

17    truthfully.

18         Mr. -- I am not sure which lawyer I should refer

19    to you.  Is it you --

20         MR. O'NEILL:  Yes, Your Honor.

21         THE COURT:  -- do I address you with the

22    questions?

23         MR. O'NEILL:  Yes.

24         THE COURT:  Okay.  Tell me your name again,

25    please, sir.

Proceedings                                    10

1          MR. O'NEILL:  O'Neill.

2          THE COURT:  Mr. O'Neill.  Okay.

3          MR. O'NEILL:  Yes, Your Honor.

4          THE COURT:  All right.  Mr. O'Neill, have you

5    discussed the matter of pleading guilty with your client?

6          MR. O'NEILL:  I have, Your Honor.

7          THE COURT:  Does he understand the rights he would

8    be waiving by pleading guilty?

9          MR. O'NEILL:  Yes, Your Honor.  We went over the

10   rules and the colloquy.

11         THE COURT:  Okay.  Is he capable of understanding

12   the nature of these proceedings?

13         MR. O'NEILL:  Yes, Judge.

14         THE COURT:  Do you have any doubt as to

15   Mr. Leissner's competence to plead at this time?

16         MR. O'NEILL:  None whatsoever, Your Honor.

17         THE COURT:  Have you advised him of the maximum

18   and minimum sentence and fine that can be imposed, as well

19   as the forfeiture allegations in the information?

20         MR. O'NEILL:  Yes, Judge.  We went over all the

21   applicable benefits.

22         THE COURT:  And have you discussed with him the

23   effect of the sentencing guidelines?

24         MR. O'NEILL:  I have, Your Honor.  We have not

25   come to a complete computation, for obvious reasons.  I have

1   explained to him the whole sentencing process, that

2   Pretrial Services will get involved, there will be a

3   presentence report, and the Court ultimately makes the

4   determination.  He understands the parameters, what the

5   maximums are, what the minimums are, and they can be

6   anywhere in between.

7            THE COURT:  Okay.  And that Probation, rather than

8   Pretrial would get involved?

9            MR. O'NEILL:  That's correct, Your Honor.  I

10  misspoke, Judge.

11           THE COURT:  Okay.

12           All right.  Mr. Leissner, you have reviewed a copy

13  of the information, correct?

14           THE DEFENDANT:  Yes, Your Honor, I have.

15           THE COURT:  I know I have asked you that a number

16  of times.

17           THE DEFENDANT:  No, I have reviewed it, correct.

18           THE COURT:  So the two charges in the information,

19  I am going to just spend a little bit of time discussing

20  that and the elements of the crime to make sure you

21  understand what it is you are pleading guilty to.

22           THE DEFENDANT:  Thank you, Your Honor.

23           THE COURT:  Count 1 charges that between

24  January 2009 and October 2014 you, and others, knowingly and

25  willfully conspired to violate the Foreign Corrupt Practices

Proceedings                                          12

1    Act.

2              Count 2 charges that in or about January of 2009

3    and October of 2014 you, and others, knowingly and

4    intentionally conspired to commit money laundering.

5              Now, and I know your attorney has gone over this

6    with you, but I am going to try to just explain to you in

7    general terms what these charges mean.  The conspiracy, as

8    you know, means that you and at least one other person acted

9    for purposes of committing a crime, and the conspiracies

10   here charge certain overt acts.  In order for the Government

11   to convict you at a trial of conspiracy, and this is just

12   conspiracy generally, they would have to show that two or

13   more persons entered into an unlawful agreement, the

14   agreement that is charged in the information, starting on or

15   about January 2009 and continued through the end of the

16   charge period, which I believe is 2014; that you knowingly

17   and willfully become a member of the conspiracy; that one of

18   the members, it does not have to be you, of the conspiracy

19   knowingly committed at least one of the overt acts charged

20   in the indictment, and there are a number of overt acts

21   charged with regard to Count 1.

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Yes, the overt acts are charged with

24   regard to Count 1.  And that the overt acts were committed

25   to further some object of the conspiracy.  So that is

Proceedings                                      13

1    generally the law on conspiracy and what the Government

2    would have to prove at a trial against you.

3              With regard to the Foreign Corrupt Practices Act,

4    you are charged under the Antibribery Division, and you are

5    charged both as an issuer, as I understand it, and a

6    domestic concern.

7              Is that accurate, Counsel?

8              MS. KASULIS:  Yes, Your Honor.

9              THE COURT:  Okay.

10             MS. KASULIS:  The employee or agent of an issuer

11   under domestic concern.

12             THE COURT:  And so the elements would be the same

13   for both, except they could prove that you are one or the

14   other.

15             THE DEFENDANT:  Yes.

16             THE COURT:  And to convict you at the trial,

17   the Government would have to prove that you are -- you were

18   an employee or agent of an issuer as charged in the

19   indictment; that you made use of the mail or any other means

20   or instrumentality of interstate commerce, which could be

21   wires also in addition to the mail, in furtherance of an

22   offer, payment, promise to pay, or authorization of the

23   payment of anything of value to either a foreign official or

24   any person with knowledge that all or a portion of such

25   money or thing of value would be offered, given, or promised

Proceedings                                14

1    directly or indirectly to any foreign official; that this

2    was done corruptly and for the purpose of influencing an

3    official act or an official in his official capacity or

4    inducing a foreign official to do or omit an act in

5    violation of that official's lawful duty or securing any

6    improper advantage or inducing the foreign official to use

7    his influence with a foreign government or instrumentality

8    to effect or influence any act or decision of such

9    government or instrumentality, and that the purpose was to

10   assist the issuer, you, in obtaining -- well, you as an

11   employee or general of the issuer, obtaining or retaining

12   business for or with or directly in business to any person

13   and that you did all of this willfully.

14          Do you understand those?

15          THE DEFENDANT:  Yes, Your Honor, I do understand.

16          THE COURT:  Okay.  So that is more or less what

17   the Government would have to prove if it were to go to

18   trial.  Again, you are not charged with a substantive crime

19   of violating the Foreign Corrupt Practices Act, you are

20   charged with conspiring to do so.  But at a trial, the jury

21   would have to understand what that means in order to

22   determine whether or not you conspired to commit that crime.

23          Ms. Kasulis?

24          MS. KASULIS:  So in the information we are also

25   alleging violation of 78dd-3.

Proceedings                                        15

1          THE COURT:  Okay.

2          MS. KASULIS:  Which is not in the elements

3    checklist that we sent over to Your Honor.  We apologize for

4    that.  To establish dd-3 liability, action needed to be

5    taken within the United States in furtherance of the

6    violation of the FCPA, conspiracy to violate the FCPA, and

7    we have alleged that that prong of the FCPA was also

8    violated, conspiracy to violate it, as set forth in the

9    information, and there were actions taken by Mr. Leissner in

10   the United States --

11         THE COURT:  Within the U.S.?

12         MS. KASULIS:  Exactly.

13         -- separate and apart from dd-1 and dd-2

14   liability.

15         THE COURT:  Okay.  And then you are also charged

16   with circumvention of internal controls, and to prove that,

17   the Government would have to show that you somehow

18   circumvented the issuer's internal controls and caused

19   transactions to be executed that were not authorized by the

20   issuer or reported promptly, and you do so knowingly and

21   willfully.

22         Do you understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Okay.  With regard to the money

25   laundering count, I believe you are charged under two

Proceedings                                    16

1   different provision, 1956(a)(2)(A) and 1957(a).

2          As to 1956(a)(2)(A), you are charged with

3   attempting -- the elements that the Government would have to

4   prove at trial, they would have to show that you attempted

5   to -- or that you transported, transmitted, or transferred

6   money instruments or funds to or through the United States

7   for the purpose of promoting violations of the

8   Foreign Corrupt Practices Act and also the Malaysian Penal

9   Law.

10         And then with regard to 1957(a), the Government

11  would have to show that you engaged in or attempted to

12  engage in a monetary transaction in or affecting interstate

13  commerce, and that the monetary transaction involved

14  criminally derived property of a value greater than $10,000;

15  that the property was derived from specified unlawful

16  activity, and I believe here the specified unlawful

17  activities in the indictment are the same as I just

18  indicated, violation of the FCPA, and also of the Malaysian

19  Penal Law.

20         And fourth, that you acted knowingly and with

21  knowledge that the transaction involved proceeds of a

22  criminal offense, and that the transaction took place in the

23  United States, or that you are a United States person.

24         I believe that covers all of the elements of the

25  two charges in the indictment.

Proceedings                          17

1        Is that correct, Counsel?

2        MR. ROLLE:  It does, Your Honor.  There is one

3   additional theory of liability for the money laundering --

4        THE COURT:  Okay.

5        MR. ROLLE:  -- as recited in Count 2, which is

6   Subsection 1956(a)(2)(B)(i), which we've alleged that these

7   transactions were also done intended in whole or in part to

8   conceal or disguise the nature, location, source, ownership,

9   and control of the proceedings of the S underlying unlawful

10  activity.

11       THE COURT:  Okay.

12       MR. ROLLE:  And of which are the same SUA's that

13  we've alleged as Your Honor has recounted in the other

14  provision of 1956.

15       THE COURT:  Thank you, Counsel.

16       MR. ROLLE:  Yes, Your Honor.

17       THE COURT:  So do you understand, Mr. Leissner,

18  the elements of the two counts that you wish to plead guilty

19  to?

20       THE DEFENDANT:  Yes, Your Honor, I understand.

21       THE COURT:  Do you have any questions about them?

22       THE DEFENDANT:  No, Your Honor.

23       THE COURT:  Okay.

24       THE DEFENDANT:  Thank you.

25       THE COURT:  Have you had sufficient time to

```
                        Proceedings                    18
```

1    discuss with your attorney whether or not to plead guilty,

2    sir?

3              THE DEFENDANT:  Yes, Your Honor, I have.

4              THE COURT:  And are you fully satisfied with

5    Counsel's representation and advice given to you by your

6    attorneys in this case?

7              (Pause in proceedings.)

8              THE DEFENDANT:  Yes, Your Honor, I am.

9              THE COURT:  Okay.

10             THE DEFENDANT:  I thought I would make him sweat a

11   little bit.

12             THE COURT:  I'm sorry?

13             THE DEFENDANT:  I thought I would make him sweat a

14   little bit for that.

15             THE COURT:  Okay.  A sense of humor this morning.

16             Okay.

17             THE DEFENDANT:  I'm sorry.

18             THE COURT:  I am now going to explain certain

19   rights that you have, and these are rights that you will be

20   giving up by entering a plea of guilty.  You have a right to

21   continue to plead not guilty.  Even if you are guilty of the

22   charge, you can decide to plead not guilty to these charges

23   and to proceed to trial.  No one can be forced to plead

24   guilty.

25             Do you understand?

Proceedings                                    19

1          THE DEFENDANT:  Yes, Your Honor, I understand.

2          THE COURT:  Okay.

3          THE DEFENDANT:  Thank you.

4          THE COURT:  You would have a right under the

5    Constitution and Laws of the United States to a speedy and

6    public trial by a jury.

7          Do you understand?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  At the trial you would be presumed to

10   be innocent and the Government would have to prove you

11   guilty beyond a reasonable doubt.

12         Do you understand that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  You have the right to the assistance

15   of counsel for your defense.  If you were not able to afford

16   counsel, I would appoint counsel to represent you at every

17   stage of the proceeding.

18         Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  At trial, you would have the right to

21   see and hear all witnesses and to have them cross-examined

22   in your defense.

23         Do you understand?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  You would have the right on your own

Proceedings                                    20

1    part to decline to testify unless you voluntarily elected to

2    do so.

3             Do you understand?

4             THE DEFENDANT:  Yes, Your Honor.

5             THE COURT:  You have the right to compel the

6    attendance of witnesses to testify in your defense.

7             Do you understand?

8             THE DEFENDANT:  Yes, Your Honor.

9             THE COURT:  Should you decide not to testify at a

10   trial or not to put on any evidence, these facts could not

11   be used against you.

12            Do you understand?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  By entering a plea of guilty, and if I

15   accept your plea, there will be no trial of any kind and you

16   would have waived and given up your right to a trial as well

17   as those rights associated with the trial as I have just

18   described to you.

19            Do you understand?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  There will be no further trial of any

22   kind and no right to appeal from the judgment of guilty.  I

23   will simply enter a judgment of guilty on the basis of your

24   guilty plea.

25            Do you understand?

Proceedings                                    21

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  If you plead guilty, I will have to

3    ask you questions as to what you did in order to satisfy

4    myself that you are, in fact, guilty of the charges.  And

5    you will have to answer my questions and acknowledge your

6    guilt.  By answering my questions, you will be giving up

7    your right not to incriminate yourself.

8          Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Are you willing to give up your right

11   to trial and all those rights that I have just discussed by

12   pleading guilty?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  You are pleading pursuant to an

15   agreement with the Government.

16         Does someone have the original agreement?

17         MS. KASULIS:  Yes, Your Honor.

18         THE COURT:  Okay.  Thank you.

19         I am having the agreement marked as

20   Court Exhibit 1.

21         (Court's Exhibit Number 1 so marked and received

22   in evidence.)

23         THE COURT:  Did you sign this agreement?

24         THE DEFENDANT:  Yes, Your Honor, I did.

25         THE COURT:  Okay.  I am going to have my courtroom

Proceedings                                    22

1   deputy show you Page 13, and I just need you to confirm that

2   this is your signature above your name?

3            THE DEFENDANT:  Yes, Your Honor.

4            MS. KASULIS:  Your Honor, I also have a fully

5   executed copy of the information --

6            THE COURT:  Okay.

7            MS. KASULIS:  -- signed by all the parties.  I can

8   also hand that up to your deputy.

9            THE COURT:  Okay.  Sure.

10           MS. KASULIS:  Thank you.

11           THE COURT:  And has either document changed from

12  what you sent me yesterday?

13           MS. KASULIS:  No, Your Honor.

14           THE COURT:  Okay.  Thank you.

15           Okay.  Did you have an opportunity to read and

16  discuss the agreement with your attorneys before you sign

17  it, Mr. Leissner?

18           THE DEFENDANT:  Yes, I did, Your Honor.

19           THE COURT:  And did you understand it before you

20  signed it?

21           THE DEFENDANT:  Yes, Your Honor, I did.

22           THE COURT:  Did you have sufficient time to review

23  it with your attorneys?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And, Mr. O'Neill, did you have

1    sufficient time to review the agreement with your client?

2              MR. O'NEILL:  Yes, Your Honor.

3              THE COURT:  Mr. Leissner, do you have any

4    questions about the agreement?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  Okay.

7              THE DEFENDANT:  I understand.

8              THE COURT:  Does the agreement represent your full

9    understanding of your agreement with the Government,

10   Mr. Leissner?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Has anyone made any promise or

13   assurance that is not in the agreement to persuade you to

14   accept this agreement?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Has anyone threatened you in any way

17   to persuade you to accept the agreement?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  Are you pleading guilty of your own

20   free will because you are guilty?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And I know you understand that the

23   charges that you are pleading guilty to are felony offenses,

24   and if I accept them, you will be adjudicated guilty and

25   will be deprived of certain valuable civil rights such as

Proceedings                                        24

1   the right to vote, the right to hold public office, the

2   right to serve on a jury, and the right to possess a firearm

3   of any kind.

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  I understand that you are not a

6   U.S. citizen.

7            Is that correct?

8            THE DEFENDANT:  That's correct, Your Honor.

9            THE COURT:  And do you understand that your plea

10  of guilty may affect your residency and your status in the

11  United States with immigration authorities?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  That you will likely be deported as a

14  result of pleading guilty to these charges?

15           THE DEFENDANT:  Yes, Your Honor, I understand.

16           THE COURT:  Are you still willing to plead guilty

17  despite these likely immigration consequences?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Mr. O'Neill, were all formal plea

20  offers from the Government conveyed to Mr. Leissner?

21           MR. O'NEILL:  Yes, Your Honor.

22           THE COURT:  Okay.

23           All right.  I am going to review certain

24  provisions of the agreement with you to make sure you

25  understand the consequences.

Proceedings                                      25

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  As to Count 1, pursuant to violate the

3      FCPA, the maximum term of imprisonment is five years with no

4      minimum.  You also face a maximum supervised release term of

5      three years.

6              Do you understand what that means, that you would

7      be on supervision after serving any time?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  If you violate your supervision in any

10     way, you could be sent back to prison for up to two years

11     without any credit for any time already served in custody or

12     on supervision.

13             Do you understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  You also face a maximum fine of

16     $250,000 or twice the gross gain or loss, whichever is

17     greater.

18             Do you understand?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Restitution is mandatory for this

21     count, and you will be required to repay the full amount of

22     the victims' losses as determined at sentencing.

23             Do you understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  You also agree to $43,700,000 in

Proceedings                                26

1   forfeiture as set forth in the agreement in Paragraphs 6

2   through 12.

3           Counsel, I am just going to change F on Page 3

4   where it says Paragraph 6 through 13.  I believe that should

5   be 6 through 12.

6           Do you want to just confirm that?

7           MS. KASULIS:  Yes, Your Honor, that is correct.

8           THE COURT:  Okay.

9           So I set forth in Paragraphs 6 through 12 of the

10  agreement, you have agreed to that amount in criminal

11  forfeiture.

12          Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor, I do.

14          THE COURT:  You will also be responsible for $100

15  special assessment on this count and removal as I have

16  already indicated.

17          THE DEFENDANT:  Yes.

18          THE COURT:  With regard to Count 2, conspiracy to

19  commit money laundering, there is a maximum term of

20  imprisonment of 20 years, no minimum.  You also face a

21  maximum supervised release term of three years.  If you

22  violate supervision, you could be sent back to jail for up

23  to two years without any credit for time served for

24  supervised time, as I indicated on the other count also.

25          You also face on this count a maximum fine of

Proceedings                    27

1    $500,000 or twice the value of the monetary instrument or

2    funds involved in the transfer, whichever is greater.  You

3    face restitution also on this count, and the criminal

4    forfeiture agreement is consistent with your criminal

5    forfeiture on the other count.

6              Do you understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And I am going to change this

9    paragraph also so it reads 6 through 12.

10             You also are responsible for $100 special

11   assessment on this count, and removal also on this count.

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And I do want to make sure that you

14   understand that because you are pleading guilty to two

15   separate counts, the sentences could be linked to run

16   consecutive so that you can be sentenced to time on one

17   count and the time sentenced on the second count could be

18   made to run in addition to.

19             Do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.

22             All right.  Do you understand these possible

23   consequences of your plea that I have just discussed with

24   you?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Now, under the guidelines, they are

2    advisory but I do have to consider them in determining what

3    is an appropriate sentence in your case.  I will also look

4    at a number of factors, such as deterrent factors as I am

5    required to.

6          Have you discussed with your attorney how the

7    guidelines might define your case?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  I cannot determine what your advisory

10   guideline range will be at this time.  I will not know that

11   until sentencing after, as your attorney indicated, the

12   probation department has prepared a presentence report and

13   you and your attorneys and the Government have had an

14   opportunity to review it and make any objections to the

15   facts or to the calculation.  However, the sentence that I

16   ultimately impose may be different from any estimate that

17   you and your attorneys may have given you.

18         Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  After the initial advisory guideline

21   range has been determined, I do have the authority to move

22   upward or downward, and I do not have to sentence you within

23   the guideline range.

24         Do you understand that?

25         THE DEFENDANT:  Yes.  Yes, Your Honor.

Proceedings                                29

1          THE COURT:  Parole has been abolished, and so to

2     the extent you are sentenced to any jail time, you will have

3     to serve that time.

4          Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do the parties have an estimate -- at

7     least the Government has an estimate as to what the

8     guideline range would be in this case?

9          MR. ROLLE:  Yes, Your Honor.  The guideline

10     estimate as calculated by the Government is a range of life,

11     and the basis for that is the base offense level pursuant to

12     2S1.1(a)(1) is the offense level applicable to the

13     underlying crime here, violations of the FCPA, and that

14     level is 48.  That is based on the base offense level of 12,

15     increased by the value of the bribe in this case is more

16     than $550 million, which increases the base offense level by

17     30.  There is more than one bribe in this case, which

18     increases it by 2.  There is an involvement of high level

19     officials, which then increases it by 4, resulting in 48.

20          Turning to the money laundering, because the

21     defendant was convicted under Section 1956, the offense

22     level then increases by 2.  Since this involved

23     sophisticated laundering, use of shell companies, so then it

24     also increased again by 2, resulting in a total offense

25     level of --

```
                      Proceedings                    30
```

1           THE COURT:  Slow down.  You do not have to race

2   through it.

3           MR. ROLLE:  -- resulting in a --

4           THE COURT:  The reporter has to keep up with you,

5   Mr. Rolle.

6           MR. ROLLE:  Thank you, Your Honor.

7           -- the total offense level of 52.  And at a

8   criminal history category of 1 resulting in guidelines range

9   of life.

10          THE COURT:  Okay.

11          Counsel, Mr. O'Neill, do you agree with the

12  Government's estimate of the guideline range?

13          MR. O'NEILL:  That is potentially possible, yes.

14          THE COURT:  Pull the mic towards you.  You need to

15  pull the mic towards you.

16          You are saying that that is potentially possible?

17          MR. O'NEILL:  That is potentially possible.  It's

18  a potential life sentence if all charges were brought upon

19  Mr. Leissner.

20          THE COURT:  Okay.

21          And, Mr. Leissner, do you understand that these

22  estimates could be wrong?

23          THE DEFENDANT:  Yes, Your Honor, they could be

24  wrong.

25          THE COURT:  Okay.  And do you understand that

1   there is no guarantee as to the guidelines range for

2   sentencing?

3            THE DEFENDANT:  Yes, Your Honor, I understand.

4            THE COURT:  Do you also understand that I have to

5   determine the range and that I am not required to sentence

6   you within the range?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  If the advisory range in the

9   presentence report is different from the guideline range you

10  expect, you could not take your plea back.

11           Do you understand that?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  If your ultimate sentence is different

14  than what you hope it will be, you cannot take your plea

15  back.

16           Do you understand?

17           THE DEFENDANT:  Yes, Your Honor.

18  ████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

Proceedings                                          32



Proceedings                                    33

█████████████████

Under some circumstances the Government may -- the Government and you may have the right to appeal any sentence that I impose.  However, by entering into this agreement and pleading guilty, I believe you have waived or given up your right to appeal or collaterally attack all or part of your sentence if I sentence you, sir, to 300 months or less in custody.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Leissner, do you have any questions about the rights you are giving up, the punishment you face, the nature of the charges, the plea agreement, or anything else that you would like to discuss with the Court at this time?

THE DEFENDANT:  No, I don't, Your Honor.  Thank you.

THE COURT:  Are you ready to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. O'Neill, do you know of any reason why your client should not plead guilty?

MR. O'NEILL:  No, Your Honor.

THE COURT:  Are you aware of any viable defenses?

MR. O'NEILL:  None, Your Honor.

THE COURT:  Mr. Leissner, what is your plea to

Proceedings                                    34

1   Count 1 of the indictment charging you with conspiracy to

2   violate the Foreign Corrupt Practices Act, guilty or not

3   guilty?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  What is your plea to Count 2 of the

6   indictment charging you with conspiracy to commit -- I'm

7   sorry.  I keep saying "indictment," as my courtroom deputy

8   just pointed out.  You are pleading guilty to information.

9              THE DEFENDANT:  Yes.

10             THE COURT:  What is your plea to Count 2 of the

11  information charging you with conspiracy to commit money

12  laundering, guilty or not guilty?

13             THE DEFENDANT:  Guilty.

14             THE COURT:  Are you making the plea of guilty

15  voluntarily and of your own free will?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Has anyone threatened or forced you to

18  plead guilty?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  Other than the agreement with the

21  Government, has anyone made any promises that caused you to

22  plead guilty?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Has anyone made any promises as to

25  what your sentence will be?

Proceedings                                    35

1        THE DEFENDANT:  No, Your Honor.

2        THE COURT:  Okay.  So I need you to tell me in

3   your own words what you did to make you guilty of Counts 1

4   and 2, keeping in mind the elements of both crimes as we

5   discussed earlier in the proceeding.

6        THE DEFENDANT:  Your Honor, I wrote a statement.

7        THE COURT:  Okay.

8        THE DEFENDANT:  May I read that?

9        THE COURT:  You may.

10       THE DEFENDANT:  Thank you.

11       THE COURT:  Just read it slowly so that the court

12  reporter can take it all down.

13       THE DEFENDANT:  I have read the information filed

14  by the Government.  As described in the information, I was

15  an employee of Goldman Sachs - Asia, LLC between

16  approximately 2011 and 2016, as well as of other public

17  subsidiaries of Goldman Sachs, which is identified as U.S.

18  Financial Institution Number 1 in the information.  At all

19  times, I was an agent of Goldman Sachs and was a

20  participating managing director of Goldman Sachs.  At all

21  times concerning the 1MDB business that Goldman Sachs

22  conducted with 1MDB between 2009 and 2014, and which is

23  described in the information, including the negotiation and

24  execution of three bond deals and other transactions, I

25  acted on behalf of, and within the scope of my employment

Proceedings                                    36

1    and agency of, Goldman Sachs to acquire and execute the 1MDB

2    transaction in business --

3              THE COURT:  Slow down.

4              Let me ask you one question.

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Did you say that you were employed at

7    Goldman Sachs from 2011 to 2016?

8              THE DEFENDANT:  I was employed during that time at

9    Goldman Sachs, but I actually started employment at

10   Goldman Sachs much earlier.  But, yes, I was employed during

11   that time.

12             THE COURT:  I only asked because you are

13   allocuting to conduct from 2009 to 2014.

14             THE DEFENDANT:  Correct.  I was an employee at

15   Goldman Sachs from 1998 to 2016.  That's the whole entire

16   employment at Goldman Sachs.  Development period for this

17   cause was 2009 through 2014.

18             THE COURT:  Okay.  Thank you for that

19   clarification.

20             You may continue.

21             THE DEFENDANT:  1MDB was a strategic investment

22   and development company wholly owned and controlled by the

23   Government of Malaysia.  As I understood, 1MDB was created

24   to pursue investment and development projects for the

25   economic benefit of Malaysia and its people.  While acting

Proceedings                                    37

1   within the scope of my employment and with the intent to

2   benefit Goldman Sachs and myself, as an employee and agent

3   of Goldman Sachs, I entered into a conspiracy with those

4   individuals identified in the Government's information to

5   pay bribes and kickbacks to obtain and then retain business

6   from 1MDB for Goldman Sachs.

7            THE COURT:  Including the person identified as the

8   intermediary who you dealt with who then dealt with --

9            THE DEFENDANT:  Yes.

10           THE COURT:  -- this entity?

11           THE DEFENDANT:  Yes, that's correct.

12           THE COURT:  Okay.

13           THE DEFENDANT:  That individual would be Jho Low

14  that you're referring to, I think, as Conspirator Number 1,

15  Co-Conspirator Number 1 in the information.

16           THE COURT:  All right.

17           THE DEFENDANT:  Yes.

18           THE COURT:  Please proceed.

19           THE DEFENDANT:  Yes, Your Honor.

20           The goal of paying bribes and kickbacks was to

21  influence the government officials to take official action

22  so that Goldman Sachs would receive business from 1MDB.  I

23  took part in the process of paying some of these bribes and

24  kickbacks.  I also knew that some of the funds that would be

25  used to pay bribes and kickbacks to government officials

Proceedings                    38

1   would move through the U.S. banking system.  For instance, I

2   knew that funds derived from Project Magnolia, specifically

3   mentioned in the information, would be diverted to me and

4   others, including government officials, through shell

5   companies beneficially owned and controlled by myself and

6   others in U.S. dollars, and those financial transactions

7   would be processed through the United States.  I knew that

8   the use of shell companies in these fund -- these fund

9   transfers was designed, at least in part, to conceal and

10   disguise the nature, location, source, ownership, and

11   control of the diverted and the stolen funds.

12          The following is one specific instance involving

13   the movement of funds:  On or about October 10, 2014, I

14   caused approximately $4.1 million to be wire transferred

15   from a foreign bank account controlled by myself and another

16   individual to the U.S. bank account of a New York jeweler in

17   part to pay for jewelry for the wife of a Malaysian

18   government official.  I understood that this payment to the

19   New York jeweler was intended to benefit the Malaysian

20   government official and his wife in order to influence the

21   government official to take official acts that would help

22   provide 1MDB business to Goldman Sachs, for the benefit of

23   Goldman Sachs and myself.  During the course of the

24   conspiracy, I conspired with other employees and agents of

25   Goldman Sachs very much in line of its culture of

Proceedings                                    39

1   Goldman Sachs to conceal facts from certain compliance and

2   legal employees of Goldman Sachs, including the fact that

3   Jho Low, who is identified as Co-Conspirator Number 1 in the

4   information, was acting as a intermediary for on behalf of

5   Goldman Sachs, 1MDB, and Malaysian and Abu Dhabi officials.

6          As stated in the information, on one occasion in

7   2012, I told a committee at Goldman Sachs that Jho Low was

8   not involved in one of the bond transactions.  This was not

9   true.  I knew that concealing Jho Low's involvement as an

10  intermediary was contrary to Goldman Sachs's stated internal

11  policies and procedures.  I and several other employees of

12  Goldman Sachs at the time also concealed that we knew that

13  Jho Low was promising and paying bribes and kickbacks to

14  foreign officials to obtain and retain 1MDB business for

15  Goldman Sachs, for the benefit of Goldman Sachs and myself,

16  and using some of the proceeds of the 1MDB bonds to do so.

17  I knew that this was contrary to Goldman Sachs's stated

18  policies and procedures.

19         As a result of these bribes and kickbacks, and in

20  movement of the funds through the bribes and kickbacks,

21  Goldman Sachs received substantial business from 1MDB.  The

22  three bond deals and related transactions resulted in

23  substantial fees and revenues for Goldman Sachs, of which

24  and in many cases, it was very proud of at the time.  In

25  addition, I received large year-end bonuses as an employee

1   and agent of Goldman Sachs.

2            That concludes my statement, Your Honor.

3            THE COURT:  Okay.  I believe that covers all of

4   the elements.

5            Is there anything else the Government would like

6   to add as to any additional evidence it would produce at a

7   trial?

8            MS. KASULIS:  Yes, Your Honor.  The Government

9   would be prepared to introduce evidence at trial that would

10  show the use of interstate wires in furtherance of the

11  schemes, and that those wires passed through the

12  Eastern District of New York, among other sources of

13  evidence establishing venue within the Eastern District,

14  such as travel records and the use of wires by

15  Goldman Sachs's employees in the New York City headquarters

16  to communicate regarding the 1MDB bond deals.  So those

17  communications additionally were transported through the

18  Eastern District of New York.

19           THE COURT:  And I take it that Mr. Leissner would

20  waive any venue and to the extent that there was a challenge

21  to venue in this case?

22           THE DEFENDANT:  I'm sorry.  Let me just ask a

23  question.

24           THE COURT:  Sure.

25           (Pause in proceedings.)

Proceedings                              41

1          THE DEFENDANT:  Yes, Your Honor, I understand.

2          THE COURT:  That even though it appears most of

3    the conduct took place in the Southern District of New York,

4    the Government's argument is that the use of interstate wire

5    is sufficient for venue in the Eastern District of New York.

6    But to the extent that there are any issues, that you would

7    waive challenge to venue --

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  -- and agree to venue here in the

10   Eastern District of New York?

11         THE DEFENDANT:  Yes, Your Honor, I would agree to

12   that.

13         THE COURT:  All right.

14         All right.  Is there anything else that I need to

15   ask Mr. Leissner?

16         MS. KASULIS:  No, Your Honor.

17         THE COURT:  Okay.  Based on the information given

18   to me, my observation of Mr. Leissner and his demeanor here

19   in the courtroom, representation of Counsel, and information

20   from the Government, I find that you are fully competent and

21   capable of entering an informed plea; that you are aware of

22   the nature of the charges and the consequences of pleading

23   guilty; and that the plea of guilty here to both counts of

24   the information is knowingly and voluntary and it is also

25   supported by an independent basis, in fact, containing the

Proceedings                          42

1   essential elements of the offense, and so I, therefore,

2   accept the plea of guilty to both counts of the information,

3   and I adjudicate you guilty of both offenses.

4           As I refer you to the probation department that we

5   discussed earlier, they will interview you.  You have the

6   right to have your attorney present at that interview, and

7   they will prepare a presentence investigation report.  You

8   will have an opportunity to review that, comment upon it,

9   object to anything in it.

10          Give me a date, please.

11          THE COURTROOM DEPUTY:  January 10th at 10:00 a.m.

12          THE COURT:  January -- push it back, please.

13          THE COURTROOM DEPUTY:  Later?

14          THE COURT:  Yes.

15          THE COURTROOM DEPUTY:  January 17th.

16          THE COURT:  January 17th at 10:00 a.m. for

17  sentencing.

18          Is there anything else we need to discuss?

19          MR. O'NEILL:  Yes, Your Honor.

20          THE COURT:  Bail.

21          MR. O'NEILL:  If I may, Your Honor?

22          THE COURT:  Okay.

23          ████████████████████████████████████████████

24  █████████████████████████████████████████████████████

25  ████████████████████████████████████████████



Proceedings                                                  43



Proceedings                                        45



Case 1:18-cr-00439-MKB  Document 30  Filed 11/09/18  Page 46 of 48 PageID #: 367





```
                         Proceedings                    47
 1

 2

 3

 4

 5

 6

 7

 8              THE COURT:  All right.

 9              Is there anything else?

10              MR. O'NEILL:  No, not at this time.

11              THE COURT:  Okay.

12              MR. O'NEILL:  Thank you, Your Honor.

13              THE COURT:  All right.

14              Okay.  Mr. Leissner, you have to continue to

15    comply with all of your Pretrial Services's conditions.

16    Okay?

17              Then we are adjourned.

18              MS. KASULIS:  Thank you, Your Honor.

19              MR. O'NEILL:  Thank you.

20              THE COURT:  Have a good day everyone.

21              (Matter concluded.)

22

23                        --oo0oo--

24

25                        I N D E X
```

Proceedings                                    48

EXHIBITS


Court's Exhibit Number 1                              21




*I (we) certify that the foregoing is a correct transcript*
*from the record of proceedings in the above-entitled matter.*

        */s/ David R. Roy*              *October 15, 2018*
         *DAVID R. ROY*                      *Date*