# EXHIBIT A

1

1      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - - -X
3   UNITED STATES OF AMERICA,     : 18-CR-439 (MKB)
                                  :
4            Plaintiff,           :
                                  :
5         -against-              : United States Courthouse
                                  : Brooklyn, New York
6   JOHN DOE,                     :
                                  :
7            Defendant.           : Tuesday, August 28, 2018
                                  : 10:30 a.m.
8   - - - - - - - - - - - - - - - -X

9

10

11

12  ************************************************************

13      S E A L E D    P R O C E E D I N G S

14  ************************************************************

15

16

17

18
        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
19     BEFORE THE HONORABLE MARGO K. BRODIE
         UNITED STATES DISTRICT JUDGE
20

21

22

23

24

25

SEALED PROCEEDINGS                                    2

1               A P P E A R A N C E S:

2  For the Government:        RICHARD P. DONOGHUE, ESQ.
                              UNITED STATES ATTORNEY
3                             Eastern District of New York
                              271 Cadman Plaza East
4                             Brooklyn, New York 11201
                              BY:  JACQUELYN KASULIS, ESQ.
5                                  DREW ROLLE, ESQ.
                                   Assistant United States Attorney
6
   For the Defendant:        FREEH, SPORKIN & SULLIVAN, LLP
7                             2550 M Street Northwest
                              Washington, D.C. 20037
8                             BY:  ROBERT O'NEILL, ESQ.
                                   HONORABLE EUGENE SULLIVAN, ESQ.
9                                  EUGENE SULLIVAN, II, ESQ.

10
   Court Reporter:        DAVID R. ROY, RPR
11                         225 Cadman Plaza East
                           Brooklyn, New York 11201
12                         drroyofcr@gmail.com

13 Proceedings recorded by Stenographic machine shorthand,
   transcript produced by Computer-Assisted Transcription.
14

15           P  R  O  C  E  E  D  I  N  G  S

16                    --ooOoo--

17

18           (Closed courtroom, sealed proceedings.)

19           THE COURTROOM DEPUTY:  Criminal cause for

20  pleading, Docket Number 18-CR-439, USA versus John Doe.

21           Counsel, please state your appearances for the

22  record.

23           MS. KASULIS:  On behalf of the United States,

24  Jacquelyn Kasulis and Drew Rolle for the U.S. Attorney's

25  Office in the Eastern District of New York.

**SEALED PROCEEDINGS** 3

1        THE COURT:  Good morning, Counsel.

2        MR. ROLLE:  Good morning, Judge.

3        MS. KASULIS:  We also have Jennifer Ambuehl and

4   Mary Ann McCarthy and Woo Lee, W-O-O; L-E-E, from the Money

5   Laundering and Asset Recovery Section of the Criminal

6   Division.  And then we have Kate Nielsen from the Fraud

7   Section of the Criminal Division.

8        THE COURT:  Okay.  Thank you.

9        MS. KASULIS:  Good morning, Your Honor.

10        THE COURT:  Good morning, everyone.

11        MR. O'NEILL:  Robert O'Neill for the Defendant Tim

12   Leissner.

13        THE COURT:  Good morning.

14        Good morning, Mr. Leissner.

15        THE DEFENDANT:  Good morning, Your Honor.

16        MR. O'NEILL:  Also present are two attorneys that

17   I am also working with, Eugene Sullivan and Eugene

18   Sullivan, II.

19        MR. SULLIVAN:  Good morning.

20        MR. SULLIVAN, II:  Good morning, Your Honor.

21        THE COURT:  Good morning to you all.

22        And as I indicated, you can remain seated

23   throughout the proceedings.

24        MR. O'NEILL:  Sure.  Thank you.

25        THE COURT:  Okay.  As I understand it,

**SEALED PROCEEDINGS**                                                4

1   Mr. Leissner -- is that how you pronounce your name?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  -- that you are going to waive

4   indictment and plead guilty to a two-count information.

5          Is that correct?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  So I am going to have her

8   administer the oath to you.

9          THE COURTROOM DEPUTY:  Would you please raise your

10  right hand.

11  **T I M   L E I S S N E R**,

12          called as a witness having been

13          first duly sworn/affirmed, was examined and

14          testified as follows:

15          THE COURTROOM DEPUTY:  Please state and spell your

16  name for the record.

17          THE DEFENDANT:  It's Tim Leissner, T-I-M,

18  L-E-I-S-S-N-E-R.

19          THE COURT:  Thank you.  Please be seated,

20  Mr. Leissner.

21          THE DEFENDANT:  Thank you, Your Honor.

22          THE COURT:  I want to make sure you understand

23  that now that you are under oath, if you answer any of my

24  questions falsely, you could face another prosecution for

25  perjury or for making a false statement.

SEALED PROCEEDINGS                                    5

1            Do you understand?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.  And how old are you,

4    Mr. Leissner?

5            THE DEFENDANT:  Forty-eight.

6            THE COURT:  All right.  How far did you get in

7    school?

8            THE DEFENDANT:  I got a Ph.D. at the end, a

9    doctorate.  I have a Master's Degree and Bachelor's in

10   business.

11           THE COURT:  All right.  So you are quite educated.

12           And you speak and understand English, correct?

13           THE DEFENDANT:  Yes, I do, Your Honor.

14           THE COURT:  Counsel, have you been able to

15   communicate with your client in English?

16           MR. O'NEILL:  Yes, Your Honor.

17           THE COURT:  You do not have to stand.  I know it

18   is --

19           MR. O'NEILL:  Yes, Your Honor.

20           THE COURT:  -- the natural reaction, but you can

21   remain seated in the courtroom unless there is a jury.

22           MR. O'NEILL:  Thank you.

23           THE COURT:  Mr. Leissner, are you currently or

24   have you recently been under the care of a doctor or a

25   psychiatrist?

SEALED PROCEEDINGS                    6

1          THE COURTROOM DEPUTY:  No, Your Honor, I have not.

2          THE COURT:  Are you currently or have you recently

3    been treated or hospitalized for any type of addiction,

4    including drug or alcohol addiction?

5          THE COURTROOM DEPUTY:  No, Your Honor, I have not.

6          THE COURT:  Have you taken any drugs, medicine, or

7    pills --

8          THE DEFENDANT:  No.

9          THE COURT:  -- or had any alcoholic beverages

10   within the last 48 hours?

11         THE COURTROOM DEPUTY:  No, Your Honor, I have not

12   even had a drink.

13         THE COURT:  Not even a drink?

14         THE DEFENDANT:  Right.

15         THE COURT:  Okay.  Is your mind clear today?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And do you understand what is

18   happening today?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.  You have been charged in a

21   two-count information.

22         Have you had a chance to review that information?

23         THE DEFENDANT:  Yes, Your Honor, I have with my

24   counsel.

25         THE COURT:  And do you understand that the charges

1    are conspiracy to violate the Foreign Corrupt Practices Act

2    and conspiracy to commit money laundering?

3            THE DEFENDANT:  Yes, Your Honor, I understand.

4            THE COURT:  Because these are felony crimes, you

5    have a constitutional right to be charged by way of an

6    indictment by a grand jury, but you can waive that right and

7    instead consent to be charged by the United States Attorney

8    by way of an information.  Instead of an indictment, these

9    felony charges against you have been brought by way of an

10   information by the U.S. Attorney's Office.  Unless you waive

11   indictment, you may not be charged with a felony unless a

12   grand jury finds and returns an indictment and finds that

13   there is probable cause to charge you.  If you do not waive

14   indictment, the Government may present the case to the

15   grand jury and the grand jury, they might or they might not

16   indict you.  A grand jury, as I am sure your lawyers have

17   explained to you, is comprised of at least 15, but not more

18   than 23 persons and at least 12 of them would have to vote

19   to indict you.

20           Do you understand that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  They would have to find that there is

23   probable cause to believe that you have committed the two

24   crimes.

25           THE DEFENDANT:  Yes, Your Honor, and I understand.

**SEALED PROCEEDINGS**                        8

1          THE COURT:  If you waive indictment by the

2    grand jury, the case will proceed against you by way of the

3    information charged by the U.S. Attorney as though you had

4    been indicted.

5          Have you discussed the matter of waiving your

6    right to indictment by a grand jury with your attorneys?

7          THE DEFENDANT:  Yes, Your Honor, I have.

8          THE COURT:  And do you understand your right to

9    have an indictment returned by the grand jury?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have any threats or promises been made

12    to you to induce you to waive indictment?

13          THE DEFENDANT:  No, Your Honor, they have not.

14          THE COURT:  Do you wish to waive your right to

15    indictment by a grand jury?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Counsel, do you see any reason why

18    your client should not waive indictment?

19          MR. O'NEILL:  No, Your Honor.

20          THE COURT:  Okay.  I have before me a Waiver of

21    Indictment.  May I have the parties please sign it.

22          There you go.

23          MS. KASULIS:  We have it --

24          THE COURT:  Is there one that is already signed?

25          MS. KASULIS:  We do have one, Your Honor.

1          THE COURT:  Okay.  Can you show it to Mr. Leissner

2    so I can confirm that that is actually his signature?

3          THE DEFENDANT:  Yes, Your Honor, that's my

4    signature.

5          THE COURT:  Okay.  So I will sign this order.

6          I find that the Waiver of Indictment is knowingly

7    and voluntarily made and I accept it.

8          Here you go.

9          So now I am going to arraign you on the charges in

10   the information.  I have already told you what they are, the

11   two conspiracy charges, and you have informed me,

12   Mr. Leissner, that you have reviewed a copy of the

13   information with your attorney.

14         Counsel, would you like me to read the information

15   to your client or do you waive the read-in?

16         MR. O'NEILL:  Your Honor, we waive the read-in.

17         THE COURT:  Okay.

18         Now, Mr. Leissner, because of your wish to plead

19   guilty to the two counts of the information, I need to ask

20   you a number of questions.  This is a serious decision and I

21   need to ensure myself that you are making this decision

22   knowingly and voluntarily.  I am going to also explain

23   certain rights to you.  With regard to the questions if at

24   any time you do not understand my questions, let me know and

25   I will reword the question.  If at any time you need to

1  consult with your lawyers, let me know and I will take a

2  break for you to do that.

3           THE DEFENDANT:  Thank you, Your Honor.

4           THE COURT:  I remind you that you are still under

5  oath.

6           THE DEFENDANT:  Yes.

7           THE COURT:  And so you must answer my questions

8  truthfully.

9           Mr. -- I am not sure which lawyer I should refer

10  to you.  Is it you --

11           MR. O'NEILL:  Yes, Your Honor.

12           THE COURT:  -- do I address you with the

13  questions?

14           MR. O'NEILL:  Yes.

15           THE COURT:  Okay.  Tell me your name again,

16  please, sir.

17           MR. O'NEILL:  O'Neill.

18           THE COURT:  Mr. O'Neill.  Okay.

19           MR. O'NEILL:  Yes, Your Honor.

20           THE COURT:  All right.  Mr. O'Neill, have you

21  discussed the matter of pleading guilty with your client?

22           MR. O'NEILL:  I have, Your Honor.

23           THE COURT:  Does he understand the rights he would

24  be waiving by pleading guilty?

25           MR. O'NEILL:  Yes, Your Honor.  We went over the

Case 1:18-cr-00439-MKB  Document 47-1  Filed 04/06/20  Page 12 of 49 PageID #: 453

1    rules and the colloquy.

2           THE COURT:  Okay.  Is he capable of understanding

3    the nature of these proceedings?

4           MR. O'NEILL:  Yes, Judge.

5           THE COURT:  Do you have any doubt as to

6    Mr. Leissner's competence to plead at this time?

7           MR. O'NEILL:  None whatsoever, Your Honor.

8           THE COURT:  Have you advised him of the maximum

9    and minimum sentence and fine that can be imposed, as well

10   as the forfeiture allegations in the information?

11          MR. O'NEILL:  Yes, Judge.  We went over all the

12   applicable benefits.

13          THE COURT:  And have you discussed with him the

14   effect of the sentencing guidelines?

15          MR. O'NEILL:  I have, Your Honor.  We have not

16   come to a complete computation, for obvious reasons.  I have

17   explained to him the whole sentencing process, that

18   Pretrial Services will get involved, there will be a

19   presentence report, and the Court ultimately makes the

20   determination.  He understands the parameters, what the

21   maximums are, what the minimums are, and they can be

22   anywhere in between.

23          THE COURT:  Okay.  And that Probation, rather than

24   Pretrial would get involved?

25          MR. O'NEILL:  That's correct, Your Honor.  I

SEALED PROCEEDINGS                    12

1  misspoke, Judge.

2           THE COURT:  Okay.

3           All right.  Mr. Leissner, you have reviewed a copy

4  of the information, correct?

5           THE DEFENDANT:  Yes, Your Honor, I have.

6           THE COURT:  I know I have asked you that a number

7  of times.

8           THE DEFENDANT:  No, I have reviewed it, correct.

9           THE COURT:  So the two charges in the information,

10 I am going to just spend a little bit of time discussing

11 that and the elements of the crime to make sure you

12 understand what it is you are pleading guilty to.

13          THE DEFENDANT:  Thank you, Your Honor.

14          THE COURT:  Count 1 charges that between

15 January 2009 and October 2014 you, and others, knowingly and

16 willfully conspired to violate the Foreign Corrupt Practices

17 Act.

18          Count 2 charges that in or about January of 2009

19 and October of 2014 you, and others, knowingly and

20 intentionally conspired to commit money laundering.

21          Now, and I know your attorney has gone over this

22 with you, but I am going to try to just explain to you in

23 general terms what these charges mean.  The conspiracy, as

24 you know, means that you and at least one other person acted

25 for purposes of committing a crime, and the conspiracies

1    here charge certain overt acts.  In order for the Government

2    to convict you at a trial of conspiracy, and this is just

3    conspiracy generally, they would have to show that two or

4    more persons entered into an unlawful agreement, the

5    agreement that is charged in the information, starting on or

6    about January 2009 and continued through the end of the

7    charge period, which I believe is 2014; that you knowingly

8    and willfully become a member of the conspiracy; that one of

9    the members, it does not have to be you, of the conspiracy

10   knowingly committed at least one of the overt acts charged

11   in the indictment, and there are a number of overt acts

12   charged with regard to Count 1.

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  Yes, the overt acts are charged with

15   regard to Count 1.  And that the overt acts were committed

16   to further some object of the conspiracy.  So that is

17   generally the law on conspiracy and what the Government

18   would have to prove at a trial against you.

19            With regard to the Foreign Corrupt Practices Act,

20   you are charged under the Antibribery Division, and you are

21   charged both as an issuer, as I understand it, and a

22   domestic concern.

23            Is that accurate, Counsel?

24            MS. KASULIS:  Yes, Your Honor.

25            THE COURT:  Okay.

1          MS. KASULIS:  The employee or agent of an issuer

2    under domestic concern.

3          THE COURT:  And so the elements would be the same

4    for both, except they could prove that you are one or the

5    other.

6          THE DEFENDANT:  Yes.

7          THE COURT:  And to convict you at the trial,

8    the Government would have to prove that you are -- you were

9    an employee or agent of an issuer as charged in the

10   indictment; that you made use of the mail or any other means

11   or instrumentality of interstate commerce, which could be

12   wires also in addition to the mail, in furtherance of an

13   offer, payment, promise to pay, or authorization of the

14   payment of anything of value to either a foreign official or

15   any person with knowledge that all or a portion of such

16   money or thing of value would be offered, given, or promised

17   directly or indirectly to any foreign official; that this

18   was done corruptly and for the purpose of influencing an

19   official act or an official in his official capacity or

20   inducing a foreign official to do or omit an act in

21   violation of that official's lawful duty or securing any

22   improper advantage or inducing the foreign official to use

23   his influence with a foreign government or instrumentality

24   to effect or influence any act or decision of such

25   government or instrumentality, and that the purpose was to

1    assist the issuer, you, in obtaining -- well, you as an

2    employee or general of the issuer, obtaining or retaining

3    business for or with or directly in business to any person

4    and that you did all of this willfully.

5                Do you understand those?

6                THE DEFENDANT:  Yes, Your Honor, I do understand.

7                THE COURT:  Okay.  So that is more or less what

8    the Government would have to prove if it were to go to

9    trial.  Again, you are not charged with a substantive crime

10   of violating the Foreign Corrupt Practices Act, you are

11   charged with conspiring to do so.  But at a trial, the jury

12   would have to understand what that means in order to

13   determine whether or not you conspired to commit that crime.

14               Ms. Kasulis?

15               MS. KASULIS:  So in the information we are also

16   alleging violation of 78dd-3.

17               THE COURT:  Okay.

18               MS. KASULIS:  Which is not in the elements

19   checklist that we sent over to Your Honor.  We apologize for

20   that.  To establish dd-3 liability, action needed to be

21   taken within the United States in furtherance of the

22   violation of the FCPA, conspiracy to violate the FCPA, and

23   we have alleged that that prong of the FCPA was also

24   violated, conspiracy to violate it, as set forth in the

25   information, and there were actions taken by Mr. Leissner in

SEALED PROCEEDINGS                      16

1    the United States --

2              THE COURT:  Within the U.S.?

3              MS. KASULIS:  Exactly.

4              -- separate and apart from dd-1 and dd-2

5    liability.

6              THE COURT:  Okay.  And then you are also charged

7    with circumvention of internal controls, and to prove that,

8    the Government would have to show that you somehow

9    circumvented the issuer's internal controls and caused

10   transactions to be executed that were not authorized by the

11   issuer or reported promptly, and you do so knowingly and

12   willfully.

13             Do you understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Okay.  With regard to the money

16   laundering count, I believe you are charged under two

17   different provision, 1956(a)(2)(A) and 1957(a).

18             As to 1956(a)(2)(A), you are charged with

19   attempting -- the elements that the Government would have to

20   prove at trial, they would have to show that you attempted

21   to -- or that you transported, transmitted, or transferred

22   money instruments or funds to or through the United States

23   for the purpose of promoting violations of the

24   Foreign Corrupt Practices Act and also the Malaysian Penal

25   Law.

1        And then with regard to 1957(a), the Government

2  would have to show that you engaged in or attempted to

3  engage in a monetary transaction in or affecting interstate

4  commerce, and that the monetary transaction involved

5  criminally derived property of a value greater than $10,000;

6  that the property was derived from specified unlawful

7  activity, and I believe here the specified unlawful

8  activities in the indictment are the same as I just

9  indicated, violation of the FCPA, and also of the Malaysian

10 Penal Law.

11       And fourth, that you acted knowingly and with

12 knowledge that the transaction involved proceeds of a

13 criminal offense, and that the transaction took place in the

14 United States, or that you are a United States person.

15       I believe that covers all of the elements of the

16 two charges in the indictment.

17       Is that correct, Counsel?

18       MR. ROLLE:  It does, Your Honor.  There is one

19 additional theory of liability for the money laundering --

20       THE COURT:  Okay.

21       MR. ROLLE:  -- as recited in Count 2, which is

22 Subsection 1956(a)(2)(B)(i), which we've alleged that these

23 transactions were also done intended in whole or in part to

24 conceal or disguise the nature, location, source, ownership,

25 and control of the proceedings of the S underlying unlawful

1    activity.

2              THE COURT:  Okay.

3              MR. ROLLE:  And of which are the same SUA's that

4    we've alleged as Your Honor has recounted in the other

5    provision of 1956.

6              THE COURT:  Thank you, Counsel.

7              MR. ROLLE:  Yes, Your Honor.

8              THE COURT:  So do you understand, Mr. Leissner,

9    the elements of the two counts that you wish to plead guilty

10   to?

11             THE DEFENDANT:  Yes, Your Honor, I understand.

12             THE COURT:  Do you have any questions about them?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  Okay.

15             THE DEFENDANT:  Thank you.

16             THE COURT:  Have you had sufficient time to

17   discuss with your attorney whether or not to plead guilty,

18   sir?

19             THE DEFENDANT:  Yes, Your Honor, I have.

20             THE COURT:  And are you fully satisfied with

21   Counsel's representation and advice given to you by your

22   attorneys in this case?

23             (Pause in proceedings.)

24             THE DEFENDANT:  Yes, Your Honor, I am.

25             THE COURT:  Okay.

SEALED PROCEEDINGS                              19

1        THE DEFENDANT:  I thought I would make him sweat a

2   little bit.

3        THE COURT:  I'm sorry?

4        THE DEFENDANT:  I thought I would make him sweat a

5   little bit for that.

6        THE COURT:  Okay.  A sense of humor this morning.

7        Okay.

8        THE DEFENDANT:  I'm sorry.

9        THE COURT:  I am now going to explain certain

10  rights that you have, and these are rights that you will be

11  giving up by entering a plea of guilty.  You have a right to

12  continue to plead not guilty.  Even if you are guilty of the

13  charge, you can decide to plead not guilty to these charges

14  and to proceed to trial.  No one can be forced to plead

15  guilty.

16       Do you understand?

17       THE DEFENDANT:  Yes, Your Honor, I understand.

18       THE COURT:  Okay.

19       THE DEFENDANT:  Thank you.

20       THE COURT:  You would have a right under the

21  Constitution and Laws of the United States to a speedy and

22  public trial by a jury.

23       Do you understand?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  At the trial you would be presumed to

1   be innocent and the Government would have to prove you

2   guilty beyond a reasonable doubt.

3               Do you understand that?

4               THE DEFENDANT:  Yes, Your Honor.

5               THE COURT:  You have the right to the assistance

6   of counsel for your defense.  If you were not able to afford

7   counsel, I would appoint counsel to represent you at every

8   stage of the proceeding.

9               Do you understand that?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  At trial, you would have the right to

12  see and hear all witnesses and to have them cross-examined

13  in your defense.

14              Do you understand?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  You would have the right on your own

17  part to decline to testify unless you voluntarily elected to

18  do so.

19              Do you understand?

20              THE DEFENDANT:  Yes, Your Honor.

21              THE COURT:  You have the right to compel the

22  attendance of witnesses to testify in your defense.

23              Do you understand?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Should you decide not to testify at a

1  trial or not to put on any evidence, these facts could not

2  be used against you.

3            Do you understand?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  By entering a plea of guilty, and if I

6  accept your plea, there will be no trial of any kind and you

7  would have waived and given up your right to a trial as well

8  as those rights associated with the trial as I have just

9  described to you.

10           Do you understand?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  There will be no further trial of any

13  kind and no right to appeal from the judgment of guilty.  I

14  will simply enter a judgment of guilty on the basis of your

15  guilty plea.

16           Do you understand?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  If you plead guilty, I will have to

19  ask you questions as to what you did in order to satisfy

20  myself that you are, in fact, guilty of the charges.  And

21  you will have to answer my questions and acknowledge your

22  guilt.  By answering my questions, you will be giving up

23  your right not to incriminate yourself.

24           Do you understand that?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Are you willing to give up your right

2     to trial and all those rights that I have just discussed by

3     pleading guilty?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  You are pleading pursuant to an

6     agreement with the Government.

7          Does someone have the original agreement?

8          MS. KASULIS:  Yes, Your Honor.

9          THE COURT:  Okay.  Thank you.

10          I am having the agreement marked as

11     Court Exhibit 1.

12          (Court's Exhibit Number 1 so marked and received

13     in evidence.)

14          THE COURT:  Did you sign this agreement?

15          THE DEFENDANT:  Yes, Your Honor, I did.

16          THE COURT:  Okay.  I am going to have my courtroom

17     deputy show you Page 13, and I just need you to confirm that

18     this is your signature above your name?

19          THE DEFENDANT:  Yes, Your Honor.

20          MS. KASULIS:  Your Honor, I also have a fully

21     executed copy of the information --

22          THE COURT:  Okay.

23          MS. KASULIS:  -- signed by all the parties.  I can

24     also hand that up to your deputy.

25          THE COURT:  Okay.  Sure.

SEALED PROCEEDINGS                    23

1            MS. KASULIS:  Thank you.

2            THE COURT:  And has either document changed from

3     what you sent me yesterday?

4            MS. KASULIS:  No, Your Honor.

5            THE COURT:  Okay.  Thank you.

6            Okay.  Did you have an opportunity to read and

7     discuss the agreement with your attorneys before you sign

8     it, Mr. Leissner?

9            THE DEFENDANT:  Yes, I did, Your Honor.

10            THE COURT:  And did you understand it before you

11     signed it?

12            THE DEFENDANT:  Yes, Your Honor, I did.

13            THE COURT:  Did you have sufficient time to review

14     it with your attorneys?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  And, Mr. O'Neill, did you have

17     sufficient time to review the agreement with your client?

18            MR. O'NEILL:  Yes, Your Honor.

19            THE COURT:  Mr. Leissner, do you have any

20     questions about the agreement?

21            THE DEFENDANT:  No, Your Honor.

22            THE COURT:  Okay.

23            THE DEFENDANT:  I understand.

24            THE COURT:  Does the agreement represent your full

25     understanding of your agreement with the Government,

SEALED PROCEEDINGS                    24

1    Mr. Leissner?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Has anyone made any promise or

4    assurance that is not in the agreement to persuade you to

5    accept this agreement?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  Has anyone threatened you in any way

8    to persuade you to accept the agreement?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Are you pleading guilty of your own

11   free will because you are guilty?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  And I know you understand that the

14   charges that you are pleading guilty to are felony offenses,

15   and if I accept them, you will be adjudicated guilty and

16   will be deprived of certain valuable civil rights such as

17   the right to vote, the right to hold public office, the

18   right to serve on a jury, and the right to possess a firearm

19   of any kind.

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  I understand that you are not a

22   U.S. citizen.

23           Is that correct?

24           THE DEFENDANT:  That's correct, Your Honor.

25           THE COURT:  And do you understand that your plea

1  of guilty may affect your residency and your status in the

2  United States with immigration authorities?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  That you will likely be deported as a

5  result of pleading guilty to these charges?

6          THE DEFENDANT:  Yes, Your Honor, I understand.

7          THE COURT:  Are you still willing to plead guilty

8  despite these likely immigration consequences?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Mr. O'Neill, were all formal plea

11 offers from the Government conveyed to Mr. Leissner?

12         MR. O'NEILL:  Yes, Your Honor.

13         THE COURT:  Okay.

14         All right.  I am going to review certain

15 provisions of the agreement with you to make sure you

16 understand the consequences.

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  As to Count 1, pursuant to violate the

19 FCPA, the maximum term of imprisonment is five years with no

20 minimum.  You also face a maximum supervised release term of

21 three years.

22         Do you understand what that means, that you would

23 be on supervision after serving any time?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  If you violate your supervision in any

1  way, you could be sent back to prison for up to two years

2  without any credit for any time already served in custody or

3  on supervision.

4          Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You also face a maximum fine of

7  $250,000 or twice the gross gain or loss, whichever is

8  greater.

9          Do you understand?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Restitution is mandatory for this

12  count, and you will be required to repay the full amount of

13  the victims' losses as determined at sentencing.

14          Do you understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  You also agree to $43,700,000 in

17  forfeiture as set forth in the agreement in Paragraphs 6

18  through 12.

19          Counsel, I am just going to change F on Page 3

20  where it says Paragraph 6 through 13.  I believe that should

21  be 6 through 12.

22          Do you want to just confirm that?

23          MS. KASULIS:  Yes, Your Honor, that is correct.

24          THE COURT:  Okay.

25          So I set forth in Paragraphs 6 through 12 of the

Case 1:18-cr-00439-MKB   Document 47-1   Filed 04/06/20   Page 28 of 49 PageID #: 469

1   agreement, you have agreed to that amount in criminal

2   forfeiture.

3           Do you understand that?

4           THE DEFENDANT:  Yes, Your Honor, I do.

5           THE COURT:  You will also be responsible for $100

6   special assessment on this count and removal as I have

7   already indicated.

8           THE DEFENDANT:  Yes.

9           THE COURT:  With regard to Count 2, conspiracy to

10  commit money laundering, there is a maximum term of

11  imprisonment of 20 years, no minimum.  You also face a

12  maximum supervised release term of three years.  If you

13  violate supervision, you could be sent back to jail for up

14  to two years without any credit for time served for

15  supervised time, as I indicated on the other count also.

16          You also face on this count a maximum fine of

17  $500,000 or twice the value of the monetary instrument or

18  funds involved in the transfer, whichever is greater.  You

19  face restitution also on this count, and the criminal

20  forfeiture agreement is consistent with your criminal

21  forfeiture on the other count.

22          Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And I am going to change this

25  paragraph also so it reads 6 through 12.

1          You also are responsible for $100 special

2    assessment on this count, and removal also on this count.

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And I do want to make sure that you

5    understand that because you are pleading guilty to two

6    separate counts, the sentences could be linked to run

7    consecutive so that you can be sentenced to time on one

8    count and the time sentenced on the second count could be

9    made to run in addition to.

10         Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Okay.

13         All right.  Do you understand these possible

14   consequences of your plea that I have just discussed with

15   you?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Now, under the guidelines, they are

18   advisory but I do have to consider them in determining what

19   is an appropriate sentence in your case.  I will also look

20   at a number of factors, such as deterrent factors as I am

21   required to.

22         Have you discussed with your attorney how the

23   guidelines might define your case?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  I cannot determine what your advisory

Case 1:18-cr-00439-MKB   Document 47-1   Filed 04/06/20   Page 30 of 49 PageID #: 471

1    guideline range will be at this time.  I will not know that

2    until sentencing after, as your attorney indicated, the

3    probation department has prepared a presentence report and

4    you and your attorneys and the Government have had an

5    opportunity to review it and make any objections to the

6    facts or to the calculation.  However, the sentence that I

7    ultimately impose may be different from any estimate that

8    you and your attorneys may have given you.

9              Do you understand that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  After the initial advisory guideline

12   range has been determined, I do have the authority to move

13   upward or downward, and I do not have to sentence you within

14   the guideline range.

15             Do you understand that?

16             THE DEFENDANT:  Yes.  Yes, Your Honor.

17             THE COURT:  Parole has been abolished, and so to

18   the extent you are sentenced to any jail time, you will have

19   to serve that time.

20             Do you understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do the parties have an estimate -- at

23   least the Government has an estimate as to what the

24   guideline range would be in this case?

25             MR. ROLLE:  Yes, Your Honor.  The guideline

1   estimate as calculated by the Government is a range of life,

2   and the basis for that is the base offense level pursuant to

3   2S1.1(a)(1) is the offense level applicable to the

4   underlying crime here, violations of the FCPA, and that

5   level is 48.  That is based on the base offense level of 12,

6   increased by the value of the bribe in this case is more

7   than $550 million, which increases the base offense level by

8   30.  There is more than one bribe in this case, which

9   increases it by 2.  There is an involvement of high level

10  officials, which then increases it by 4, resulting in 48.

11          Turning to the money laundering, because the

12  defendant was convicted under Section 1956, the offense

13  level then increases by 2.  Since this involved

14  sophisticated laundering, use of shell companies, so then it

15  also increased again by 2, resulting in a total offense

16  level of --

17          THE COURT:  Slow down.  You do not have to race

18  through it.

19          MR. ROLLE:  -- resulting in a --

20          THE COURT:  The reporter has to keep up with you,

21  Mr. Rolle.

22          MR. ROLLE:  Thank you, Your Honor.

23          -- the total offense level of 52.  And at a

24  criminal history category of 1 resulting in guidelines range

25  of life.

1          THE COURT:  Okay.

2          Counsel, Mr. O'Neill, do you agree with the

3    Government's estimate of the guideline range?

4          MR. O'NEILL:  That is potentially possible, yes.

5          THE COURT:  Pull the mic towards you.  You need to

6    pull the mic towards you.

7          You are saying that that is potentially possible?

8          MR. O'NEILL:  That is potentially possible.  It's

9    a potential life sentence if all charges were brought upon

10   Mr. Leissner.

11         THE COURT:  Okay.

12         And, Mr. Leissner, do you understand that these

13   estimates could be wrong?

14         THE DEFENDANT:  Yes, Your Honor, they could be

15   wrong.

16         THE COURT:  Okay.  And do you understand that

17   there is no guarantee as to the guidelines range for

18   sentencing?

19         THE DEFENDANT:  Yes, Your Honor, I understand.

20         THE COURT:  Do you also understand that I have to

21   determine the range and that I am not required to sentence

22   you within the range?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  If the advisory range in the

25   presentence report is different from the guideline range you

1   expect, you could not take your plea back.

2           Do you understand that?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  If your ultimate sentence is different

5   than what you hope it will be, you cannot take your plea

6   back.

7           Do you understand?

8           THE DEFENDANT:  Yes, Your Honor.





SEALED PROCEEDINGS                                        33

Under some circumstances the Government may -- the Government and you may have the right to appeal any sentence that I impose.  However, by entering into this agreement and pleading guilty, I believe you have waived or given up your right to appeal or collaterally attack all or part of your sentence if I sentence you, sir, to 300 months or less in custody.

Do you understand that?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Mr. Leissner, do you have any

3    questions about the rights you are giving up, the punishment

4    you face, the nature of the charges, the plea agreement, or

5    anything else that you would like to discuss with the Court

6    at this time?

7           THE DEFENDANT:  No, I don't, Your Honor.  Thank

8    you.

9           THE COURT:  Are you ready to plead guilty?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. O'Neill, do you know of any reason

12   why your client should not plead guilty?

13          MR. O'NEILL:  No, Your Honor.

14          THE COURT:  Are you aware of any viable defenses?

15          MR. O'NEILL:  None, Your Honor.

16          THE COURT:  Mr. Leissner, what is your plea to

17   Count 1 of the indictment charging you with conspiracy to

18   violate the Foreign Corrupt Practices Act, guilty or not

19   guilty?

20          THE DEFENDANT:  Guilty.

21          THE COURT:  What is your plea to Count 2 of the

22   indictment charging you with conspiracy to commit -- I'm

23   sorry.  I keep saying "indictment," as my courtroom deputy

24   just pointed out.  You are pleading guilty to information.

25          THE DEFENDANT:  Yes.

**SEALED PROCEEDINGS**                                          35

1          THE COURT:  What is your plea to Count 2 of the

2     information charging you with conspiracy to commit money

3     laundering, guilty or not guilty?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  Are you making the plea of guilty

6     voluntarily and of your own free will?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Has anyone threatened or forced you to

9     plead guilty?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Other than the agreement with the

12     Government, has anyone made any promises that caused you to

13     plead guilty?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Has anyone made any promises as to

16     what your sentence will be?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Okay.  So I need you to tell me in

19     your own words what you did to make you guilty of Counts 1

20     and 2, keeping in mind the elements of both crimes as we

21     discussed earlier in the proceeding.

22          THE DEFENDANT:  Your Honor, I wrote a statement.

23          THE COURT:  Okay.

24          THE DEFENDANT:  May I read that?

25          THE COURT:  You may.

SEALED PROCEEDINGS                    36

1          THE DEFENDANT:  Thank you.

2          THE COURT:  Just read it slowly so that the court

3     reporter can take it all down.

4          THE DEFENDANT:  I have read the information filed

5     by the Government.  As described in the information, I was

6     an employee of Goldman Sachs - Asia, LLC between

7     approximately 2011 and 2016, as well as of other public

8     subsidiaries of Goldman Sachs, which is identified as U.S.

9     Financial Institution Number 1 in the information.  At all

10    times, I was an agent of Goldman Sachs and was a

11    participating managing director of Goldman Sachs.  At all

12    times concerning the 1MDB business that Goldman Sachs

13    conducted with 1MDB between 2009 and 2014, and which is

14    described in the information, including the negotiation and

15    execution of three bond deals and other transactions, I

16    acted on behalf of, and within the scope of my employment

17    and agency of, Goldman Sachs to acquire and execute the 1MDB

18    transaction in business --

19         THE COURT:  Slow down.

20         Let me ask you one question.

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Did you say that you were employed at

23    Goldman Sachs from 2011 to 2016?

24         THE DEFENDANT:  I was employed during that time at

25    Goldman Sachs, but I actually started employment at

Case 1:18-cr-00439-MKB   Document 47-1   Filed 04/06/20   Page 38 of 49 PageID #: 479

1   Goldman Sachs much earlier.  But, yes, I was employed during

2   that time.

3          THE COURT:  I only asked because you are

4   allocuting to conduct from 2009 to 2014.

5          THE DEFENDANT:  Correct.  I was an employee at

6   Goldman Sachs from 1998 to 2016.  That's the whole entire

7   employment at Goldman Sachs.  Development period for this

8   cause was 2009 through 2014.

9          THE COURT:  Okay.  Thank you for that

10  clarification.

11         You may continue.

12         THE DEFENDANT:  1MDB was a strategic investment

13  and development company wholly owned and controlled by the

14  Government of Malaysia.  As I understood, 1MDB was created

15  to pursue investment and development projects for the

16  economic benefit of Malaysia and its people.  While acting

17  within the scope of my employment and with the intent to

18  benefit Goldman Sachs and myself, as an employee and agent

19  of Goldman Sachs, I entered into a conspiracy with those

20  individuals identified in the Government's information to

21  pay bribes and kickbacks to obtain and then retain business

22  from 1MDB for Goldman Sachs.

23         THE COURT:  Including the person identified as the

24  intermediary who you dealt with who then dealt with --

25         THE DEFENDANT:  Yes.

1          THE COURT:  -- this entity?

2          THE DEFENDANT:  Yes, that's correct.

3          THE COURT:  Okay.

4          THE DEFENDANT:  That individual would be Jho Low

5    that you're referring to, I think, as Conspirator Number 1,

6    Co-Conspirator Number 1 in the information.

7          THE COURT:  All right.

8          THE DEFENDANT:  Yes.

9          THE COURT:  Please proceed.

10         THE DEFENDANT:  Yes, Your Honor.

11         The goal of paying bribes and kickbacks was to

12   influence the government officials to take official action

13   so that Goldman Sachs would receive business from 1MDB.  I

14   took part in the process of paying some of these bribes and

15   kickbacks.  I also knew that some of the funds that would be

16   used to pay bribes and kickbacks to government officials

17   would move through the U.S. banking system.  For instance, I

18   knew that funds derived from Project Magnolia, specifically

19   mentioned in the information, would be diverted to me and

20   others, including government officials, through shell

21   companies beneficially owned and controlled by myself and

22   others in U.S. dollars, and those financial transactions

23   would be processed through the United States.  I knew that

24   the use of shell companies in these fund -- these fund

25   transfers was designed, at least in part, to conceal and

1    disguise the nature, location, source, ownership, and

2    control of the diverted and the stolen funds.

3            The following is one specific instance involving

4    the movement of funds:  On or about October 10, 2014, I

5    caused approximately $4.1 million to be wire transferred

6    from a foreign bank account controlled by myself and another

7    individual to the U.S. bank account of a New York jeweler in

8    part to pay for jewelry for the wife of a Malaysian

9    government official.  I understood that this payment to the

10   New York jeweler was intended to benefit the Malaysian

11   government official and his wife in order to influence the

12   government official to take official acts that would help

13   provide 1MDB business to Goldman Sachs, for the benefit of

14   Goldman Sachs and myself.  During the course of the

15   conspiracy, I conspired with other employees and agents of

16   Goldman Sachs very much in line of its culture of

17   Goldman Sachs to conceal facts from certain compliance and

18   legal employees of Goldman Sachs, including the fact that

19   Jho Low, who is identified as Co-Conspirator Number 1 in the

20   information, was acting as a intermediary for on behalf of

21   Goldman Sachs, 1MDB, and Malaysian and Abu Dhabi officials.

22           As stated in the information, on one occasion in

23   2012, I told a committee at Goldman Sachs that Jho Low was

24   not involved in one of the bond transactions.  This was not

25   true.  I knew that concealing Jho Low's involvement as an

1   intermediary was contrary to Goldman Sachs's stated internal

2   policies and procedures.  I and several other employees of

3   Goldman Sachs at the time also concealed that we knew that

4   Jho Low was promising and paying bribes and kickbacks to

5   foreign officials to obtain and retain 1MDB business for

6   Goldman Sachs, for the benefit of Goldman Sachs and myself,

7   and using some of the proceeds of the 1MDB bonds to do so.

8   I knew that this was contrary to Goldman Sachs's stated

9   policies and procedures.

10          As a result of these bribes and kickbacks, and in

11  movement of the funds through the bribes and kickbacks,

12  Goldman Sachs received substantial business from 1MDB.  The

13  three bond deals and related transactions resulted in

14  substantial fees and revenues for Goldman Sachs, of which

15  and in many cases, it was very proud of at the time.  In

16  addition, I received large year-end bonuses as an employee

17  and agent of Goldman Sachs.

18          That concludes my statement, Your Honor.

19          THE COURT:  Okay.  I believe that covers all of

20  the elements.

21          Is there anything else the Government would like

22  to add as to any additional evidence it would produce at a

23  trial?

24          MS. KASULIS:  Yes, Your Honor.  The Government

25  would be prepared to introduce evidence at trial that would

1    show the use of interstate wires in furtherance of the

2    schemes, and that those wires passed through the

3    Eastern District of New York, among other sources of

4    evidence establishing venue within the Eastern District,

5    such as travel records and the use of wires by

6    Goldman Sachs's employees in the New York City headquarters

7    to communicate regarding the 1MDB bond deals.  So those

8    communications additionally were transported through the

9    Eastern District of New York.

10                   THE COURT:  And I take it that Mr. Leissner would

11   waive any venue and to the extent that there was a challenge

12   to venue in this case?

13                   THE DEFENDANT:  I'm sorry.  Let me just ask a

14   question.

15                   THE COURT:  Sure.

16                   (Pause in proceedings.)

17                   THE DEFENDANT:  Yes, Your Honor, I understand.

18                   THE COURT:  That even though it appears most of

19   the conduct took place in the Southern District of New York,

20   the Government's argument is that the use of interstate wire

21   is sufficient for venue in the Eastern District of New York.

22   But to the extent that there are any issues, that you would

23   waive challenge to venue --

24                   THE DEFENDANT:  Yes, Your Honor.

25                   THE COURT:   -- and agree to venue here in the

SEALED PROCEEDINGS                                    42

1    Eastern District of New York?

2              THE DEFENDANT:  Yes, Your Honor, I would agree to

3    that.

4              THE COURT:  All right.

5              All right.  Is there anything else that I need to

6    ask Mr. Leissner?

7              MS. KASULIS:  No, Your Honor.

8              THE COURT:  Okay.  Based on the information given

9    to me, my observation of Mr. Leissner and his demeanor here

10   in the courtroom, representation of Counsel, and information

11   from the Government, I find that you are fully competent and

12   capable of entering an informed plea; that you are aware of

13   the nature of the charges and the consequences of pleading

14   guilty; and that the plea of guilty here to both counts of

15   the information is knowingly and voluntary and it is also

16   supported by an independent basis, in fact, containing the

17   essential elements of the offense, and so I, therefore,

18   accept the plea of guilty to both counts of the information,

19   and I adjudicate you guilty of both offenses.

20             As I refer you to the probation department that we

21   discussed earlier, they will interview you.  You have the

22   right to have your attorney present at that interview, and

23   they will prepare a presentence investigation report.  You

24   will have an opportunity to review that, comment upon it,

25   object to anything in it.



SEALED PROCEEDINGS                                    43

1        Give me a date, please.

2        THE COURTROOM DEPUTY:  January 10th at 10:00 a.m.

3        THE COURT:  January -- push it back, please.

4        THE COURTROOM DEPUTY:  Later?

5        THE COURT:  Yes.

6        THE COURTROOM DEPUTY:  January 17th.

7        THE COURT:  January 17th at 10:00 a.m. for

8    sentencing.

9        Is there anything else we need to discuss?

10       MR. O'NEILL:  Yes, Your Honor.

11       THE COURT:  Bail.

12       MR. O'NEILL:  If I may, Your Honor?

13       THE COURT:  Okay.

14

15

16

17

18

19

20

21

22

23

24

25



23        THE COURT:  What is the current bond at issue?

24        MR. O'NEILL:  The current bond is $20 million,

25   Your Honor.

SEALED PROCEEDINGS                    45



Case 1:18-cr-00439-MKB   Document 47-1   Filed 04/06/20   Page 47 of 49 PageID #: 488



4        THE COURT:  Okay.  So I will grant the

5    application.  I will modify the bond conditions.

6        Michelle, can you take care of that, please.

7        THE COURTROOM DEPUTY:  Yes.

SEALED PROCEEDINGS                                    47



24          THE COURT:  All right.

25          Is there anything else?

SEALED PROCEEDINGS                48

1          MR. O'NEILL:  No, not at this time.

2          THE COURT:  Okay.

3          MR. O'NEILL:  Thank you, Your Honor.

4          THE COURT:  All right.

5          Okay.  Mr. Leissner, you have to continue to

6    comply with all of your Pretrial Services's conditions.

7    Okay?

8          Then we are adjourned.

9          MS. KASULIS:  Thank you, Your Honor.

10         MR. O'NEILL:  Thank you.

11         THE COURT:  Have a good day everyone.

12         (Matter concluded.)

13

14                    --oo0oo--

15

16               I N D E X

17               EXHIBITS

18

19    Court's Exhibit Number 1                    22

20

21

22    *I (we) certify that the foregoing is a correct transcript*
      *from the record of proceedings in the above-entitled matter.*
23

24         */s/ David R. Roy*          *October 15, 2018*
              *DAVID R. ROY*                *Date*
25

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*