UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- against -<br><br>TIM LEISSNER,<br><br>              Defendant. | Criminal No.1:18-CR-00439 (MKB)<br><br>**VERIFIED PETITION OF KIMORA LEE SIMMONS-LEISSNER TO ADJUDICATE INTEREST IN PROPERTY PURSUANT TO 21 U.S.C. § 853(n)** |

      Kimora Lee Simmons-Leissner ("Lee") hereby petitions this Court for an ancillary hearing pursuant to Title 21, United States Code, Section 853(n) to establish Lee's interest in certain property ordered forfeited by the amended preliminary order of forfeiture entered on March 3, 2023 (Dkt. No. 68) ("Preliminary Order"). On April 6, 2023, Lee received direct notice of the Preliminary Order. This petition is timely under 21 U.S.C. § 853(n)(2), as it is being filed within 30 days of receipt of direct notice.

      1.      Pursuant to 21 U.S.C. § 853(n), Lee has a legal right, title, or interest to a portion of the property set forth in pages 1-2 of the Preliminary Order and ordered forfeited in paragraph 2, page 2. Specifically, Lee owns 892,732.40 shares of stock of Celsius Holdings, Inc. ("Celsius") (the "Celsius shares"), which is a portion of the 3,325,942.00 shares of Celsius stock described in the Preliminary Order.

      2.      Defendant Tim Leissner's ("Leissner") interest in the Celsius shares was ordered forfeited to the United States in the Court's Preliminary Order, subject to the interests of third-party claimants.

1

3.      As more specifically set forth below, the purchase of the Celsius shares was with Lee's separate funds from her personal, private bank account that was previously funded by income Lee earned from her modeling career and apparel line, among other personal business ventures in which Leissner had no involvement or interest.  Leissner did not have access to Lee's account, did not contribute any funds to the purchase of the Celsius shares, and did not own the Celsius shares.  Lee's purchase was made 1.5 years before any shares of Celsius stock were restrained by the Court in connection with Leissner's bond in this case.  Thus, with respect to the 892,732.40 Celsius shares, Lee clearly is a bona fide purchaser who "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture."  21 U.S.C. § 853(n)(6)(B).

**I.      BACKGROUND**

4.      Lee is an entrepreneur, fashion designer, TV personality, author, philanthropist, and model.  Lee married Leissner in 2014.  They are currently separated.  Previously, Lee was married to Russell Simmons ("Simmons") from 1998 to 2009.

5.      Simmons formed Nu Horizons Investment Group, LLC ("Nu Horizons") in 2011 and became its sole member and manager.  On January 1, 2016, Simmons and Leissner executed an Operating Agreement for Nu Horizons, by which Leissner became a manager and Lee became a member of Nu Horizons' investment board.  The primary purpose of Nu Horizons is to provide its members with the opportunity to realize long-term appreciation from investments in securities selected by the managers and approved by the investment board.

**II.     LEE'S BANK OF AMERICA ACCOUNT**

6.      Lee has a personal, private savings account with Bank of America (Account No. XXXXXXXX2094), which she opened in December 2009.  Attached hereto as Exhibit 1 is a true

and correct copy of the signature card for the account, which shows that Lee opened the account in December 2009 and is the only signer on the account.

7. Lee refers to the account as her "nest egg" and "AllStar" account because it is funded with her separate, personal savings. She has always treated the account as a separate account for her personal savings and continues to do so today. The account is primarily used as a savings vehicle, and Lee has purchased investments using the funds from the account.

8. Since its opening in 2009 (years before Lee and Leissner met and were married), Lee funded the account with earnings from her modeling career and W-2 income. Lee has also funded the account with earnings from personal business ventures, including the salary she received for her high-end apparel brand, KLS (established in 2013).

9. At all times, Lee has been the only signer on the account. Lee instructed her accountants not to provide details of the account to Leissner. Although Lee and Leissner had other joint bank accounts while they were married, Leissner never had access to, or signing authority for, Lee's separate Bank of America account. Nor has Leissner ever funded the account.

### III. LEE'S INTEREST IN THE CELSIUS SHARES

10. On January 3, 2017, Nu Horizons executed a subscription agreement to purchase $1,300,000 of shares of Celsius (433,333.33 shares at $3.00 per share). A true and correct copy of the subscription agreement is attached hereto as Exhibit 2.

11. In connection therewith, on January 25, 2017, Lee instructed her accountants to wire to Celsius $1,000,000 of her separate funds from her personal, private account with Bank of America. On January 26, 2017, Lee wired $1,000,000 to Celsius from her Bank of America account (Account No. XXXXXXXX2094). True and correct copies of Lee's January 25, 2017

3

email to her accountants and the January 26, 2017 wire confirmation are attached hereto as Exhibit 3.

12. Although Lee purchased the Celsius shares with her separate funds, those shares were placed in Nu Horizons as an investment vehicle. This was done based on Leissner's promise that Lee would get the benefit of Nu Horizons' previously acquired shares of Celsius (purchased at a lower price), which would be blended with Lee's contribution. On January 27, 2017, Leissner confirmed that promise in writing in an email to Lee, which stated:

> "[T]o clarify the structure of our investment and **your** US$1 million. **You will wire the US$1 million directly** to Celsius Holdings Inc, but on behalf of Nu Horizons, and Celsius will record it as such. Nu Horizons is our investment vehicle which has invested to date US$3.15 million at US$0.89 per share and US$300k at US$3.00 per share. **Your** US$1 million will acquire the shares at US$3.00 per share too as this is the new round of funding. However, as we are doing it through Nu Horizons, you will get the benefit of the previously acquired stake at US$0.89 per share as **we agreed to blend your contribution with the previously existing shares**. That means **your** US$1 million will have a **blended average share price of US$1.12 per share**. The current share price as of today is US$3.65 per share, a gain of 3.25x the money invested."

(Emphasis added.) A true and correct copy of Leissner's January 27, 2017 email is attached hereto as Exhibit 4.

13. Based on Leissner's promise of a blended purchase price, Lee purchased the Celsius shares. As reflected in an April 16, 2017 email from Lee to her accountants, which forwarded the correspondence from Leisner (Ex. 4) to "explain[] [her] recent 1mm investment," Lee relied on that promise in purchasing the Celsius shares. A true and correct copy of Lee's April 16, 2017 email to her accountants is included in Exhibit 4.

14. As a result, Lee acquired a total of 892,732.40 shares of Celsius stock with her $1,000,000 investment, applying a blended rate of $1.12 per share:

| Price at Time of Investment | Money Invested | Shares Received |
|---|---|---|
| $0.89 | $3,150,000.00 | 3,539,325.84 |
| $3.00 | $1,300,000.00 (Lee's $1,000,000 investment, plus Nu Horizons' $300,000 investment) | 433,333.33 |
| $1.1201565 (blended) | $4,450,000.00 | 3,972,659.18 |

15. When Lee purchased the Celsius shares in January 2017 with her own separate funds, Lee neither knew nor had reason to know that those shares would later become subject to forfeiture. Indeed, as detailed below, the Celsius shares were not restrained until July 2018 and were not identified as being subject to forfeiture until the filing of the Preliminary Order on March 3, 2023.

IV.   **RESTRAINT AND SEIZURE OF CELSIUS SHARES**

16. As the Court is aware, Leissner was released on June 14, 2018 on a $20,000,000 bond signed by Leissner and Lee, to be secured by shares of Celsius stock.

17. On July 11, 2018, 3,972,659 shares of Celsius stock were transferred to Lee's J.P. Morgan Chase Bank brokerage account.

18. On July 12, 2018, 3,325,942 shares of Celsius stock were restrained pursuant to a restraining order entered by the Honorable Steven L. Tiscione, Eastern District of New York.[1]

19. On March 5, 2021, all of the shares of Celsius stock in Lee's J.P. Morgan Chase Bank brokerage account were ordered seized pursuant to a seizure warrant entered by the Honorable Peggy Kuo, Eastern District of New York.

---

[1] In July and August 2020, Leissner withdrew approximately 600,000 unrestrained shares for his own benefit. Lee received no benefit from those transactions.

20.     On November 1, 2018, following Leissner's plea of guilty, the Court entered a preliminary order of forfeiture against Leissner, which directed entry of a forfeiture money judgment in the amount of $43,700,000.

21.     On March 3, 2023, the Court entered the amended Preliminary Order and ordered Leissner to forfeit to the United States all right, title, and interest in 3,325,942 Celsius shares held in Lee's J.P. Morgan Chase Bank brokerage account, subject to the right of non-parties to assert an interest in those shares.  *See* Dkt. No. 68.

## V.     RUSSELL SIMMONS'S AND NU HORIZONS' CLAIM TO THE CELSIUS SHARES

22.     On May 18, 2021, Simmons filed an action in Los Angeles Superior Court against Leissner, Lee, and others relating to Simmons's claim that the shares of Celsius stock that were used to secure Leissner's bond in this case belong to Simmons and/or Nu Horizons.  *See Russell Simmons, et al. v. Tim Leissner, et al.*, Los Angeles Superior Court, Case No. 21STCV18852 (the "LASC litigation").

23.     Lee disputes Simmons's claims, brought individually and derivatively on behalf of Nu Horizons, in the LASC litigation.  Among other things:  (A) unlike Lee, Simmons did not invest his own funds to purchase shares of Celsius, and did not contribute any money in Nu Horizons for the purchase of Celsius shares; and (B) prior to the transfer of shares to be used in connection with Leissner's bond, (i) Simmons resigned as a manager of Nu Horizons on January 22, 2018, and (ii) on May 25, 2018, Simmons transferred all of his interest in Nu Horizons to Keyway Pride—a company used for Lee's investments that is entirely owned and controlled by Lee (through an additional holding company).  A true and correct copy of Simmons's January 22,

2018 resignation and the May 25, 2018 Stock Transfer Agreement are attached hereto as Exhibits 5 and 6, respectively.

24. Further, as of January 1, 2017, Leissner's interest in Nu Horizons was transferred to Keyway Pride. As such, Keyway Pride—of which Lee is the beneficial owner—now owns all of the interests in Nu Horizons. Pursuant to Section 7.5 of the January 1, 2016 Nu Horizons Operating Agreement, Lee (through Keyway Pride) is entitled to 100 percent of any distributions from Nu Horizons. A true and correct copy of the Nu Horizons Operating Agreement is attached hereto as Exhibit 7.

## VI. LEE IS A BONA FIDE PURCHASER FOR VALUE OF THE CELSIUS SHARES

25. Under 21 U.S.C. § 853(n), Lee must establish that she is a bona fide purchaser for value who, at the time of purchase, lacked reasonable cause to know that the Celsius shares were subject to forfeiture.

26. As set forth herein and in the attached exhibits, Lee has established that she is a bona fide purchaser for value of the Celsius shares. Lee gave value in exchange for her interest in the Celsius shares by purchasing the Celsius shares with $1,000,000 of her separate funds from her personal, private account with Bank of America. The Celsius shares are thus traceable to Lee.

27. Leissner did not contribute any funds to the purchase of the Celsius shares and did not own the Celsius shares. The fact that the Celsius shares were used as collateral for Leissner's bond does not mean that there is a connection between Leissner's offenses and those shares (which were seized from Lee's J.P. Morgan Chase Bank brokerage account).

28. Moreover, Lee (through Keyway Pride) currently owns all of the outstanding interests in Nu Horizons. To the extent a dispute remains regarding the right to assert a claim on behalf of Nu Horizons to the Celsius shares, that dispute should continue to proceed in the LASC

litigation. Indeed, regardless of whether the shares were distributed to Lee or lent to her by Nu Horizons (in which case Lee would need to return them to Nu Horizons)—an issue being litigated in the LASC litigation—the shares are traceable to Lee's separate funds and should be returned to Lee's J.P. Morgan Chase Bank brokerage account (from which they were seized), so that the LASC litigation can proceed accordingly.

29. At the time of her purchase in January 2017, Lee lacked reasonable cause to know that the Celsius shares would be subject to forfeiture, as the shares were not even restrained until July 2018 and were not identified as being subject to forfeiture until the filing of the Preliminary Order on March 3, 2023.

30. The 892,732.40 shares of Celsius stock should thus be returned to the account from which they were seized: Lee's J.P. Morgan Chase Bank brokerage account. Also, any order restraining the movement of those shares by Lee upon their return should be rescinded.

## VII. PRAYER FOR RELIEF

31. WHEREFORE, Petitioner Lee respectfully requests that the Court:

(A) Hold a hearing to adjudicate the validity of Lee's interest in the Celsius shares and permit Lee to testify and present evidence and witnesses on her own behalf and cross-examine witnesses who appear at the hearing;

(B) Amend its Preliminary Order to (i) recognize Lee's interest in, and entitlement to, 892,732.40 shares of Celsius stock; and (ii) return 892,732.40 shares of Celsius stock to Lee's J.P. Morgan Chase Bank brokerage account;

(C) Rescind any order restraining movement of those shares by Lee, including but not limited to the July 12, 2018 restraining order entered by the Honorable Steven L. Tiscione, Eastern District of New York; and

(D) Provide such other and further relief to which Lee is entitled.

DATED:  May 5, 2023

Respectfully submitted,

KING & SPALDING, LLP

By _____
DAVID K. WILLINGHAM (*pro hac vice* application, forthcoming)
MICHAEL D. ROTH (*pro hac vice* application, forthcoming)
DAVID LESSER
Attorneys for Petitioner KIMORA LEE SIMMONS-LEISSNER

9

## VERIFICATION

I, Kimora Lee Simmons-Leissner, verify under penalty of perjury and the laws of the United States of America that the foregoing Petition is true and correct according to the best of my knowledge and recollection.

Executed this 5th day of May, 2023 at Los Angeles CA.

By: _____
KIMORA LEE SIMMONS-LEISSNER