200 West St | New York, NY 10282-2198
Tel: 212.934.1054 | kathryn.ruemmler@gs.com

Kathryn H. Ruemmler
Chief Legal Officer and General Counsel
Legal Department

**Goldman Sachs**

May 21, 2025

Honorable Margo K. Brodie
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Brodie,

  I write on behalf of The Goldman Sachs Group, Inc. ("Goldman Sachs") in connection with the upcoming sentencing of the defendant, Timothy Leissner, for crimes he committed while employed at Goldman Sachs. In committing those crimes, Mr. Leissner deceived his colleagues for years, culminating in the only criminal case filed against Goldman Sachs in its 156-year history. Goldman Sachs respectfully requests that the Court consider this letter in determining Mr. Leissner's sentence.

  At the outset, Goldman Sachs has long recognized its role in the 1MDB scandal. As the Court is aware, Goldman Sachs was criminally charged, and its Malaysian subsidiary pleaded guilty, in connection with the case, for which it paid nearly $5 billion in penalties to authorities worldwide. At the time of the plea, in a statement to all employees, our Chief Executive Officer David M. Solomon acknowledged that "we did not adequately address red flags and scrutinize the representations of certain members of the deal team" and our Board of Directors described 1MDB as "an institutional failure."[1] The firm has also spent many years designing and implementing material enhancements to its compliance and internal controls since the revelation of problems with the 1MDB bond transactions.

  Mr. Leissner was a senior employee at Goldman Sachs and the firm takes responsibility for his actions. At the same time, there is no question that Mr. Leissner extensively lied to and deceived many people at Goldman Sachs who worked on the transactions in good faith, tried to do the right thing, and trusted him as a partner. Mr. Leissner spent years using offshore shell companies, personal email accounts and personal devices to engage in crime, evade detection, and put Goldman Sachs at risk in the process. He secretly worked with Jho Low to make illicit payments to, and for the benefit of, the then-Prime Minister of Malaysia and other senior

---

[1] *See Goldman Sachs' Statements Relating to 1MDB Government and Regulatory Settlements*, Goldman Sachs (Oct. 22, 2022), https://www.goldmansachs.com/pressroom/press-releases/2020/goldman-sachs-2020-10-22.

Honorable Margo K. Brodie
May 21, 2025
Page 2

Malaysian government officials and colluded with those officials to facilitate and cover up the crime.

Mr. Leissner's serial lies, fraud, and deception at Goldman Sachs continued from the day he first brought the transactions to the firm through the day he left the firm. And as the Government has argued, absent Mr. Leissner's extensive lies to Goldman Sachs, the 1MDB transactions would not have occurred. Indeed, in recounting his "extensive and extraordinary cooperation," the government emphasized how Leissner: (1) tried "without success" to onboard Mr. Low as a Goldman Sachs client but was "stymied [from doing so] by Goldman compliance personnel"; (2) "affirmatively lied to and failed to disclose information to multiple Goldman committees responsible for authorizing the 1MDB Bond Transactions"; (3) "concealed from Goldman that Low was the ultimate decisionmaker behind the 1MDB Bond Transactions"; (4) "concealed from Goldman's committees that . . . corrupt payments would be made to government officials"; (5) concealed that "funds raised from the 1MDB Bond Transactions would be diverted from 1MDB to make the corrupt payments as part of the scheme"; and (6) "would personally receive kickbacks from the 1MDB Bond Transactions." Govt's Sent'g Mem. as to Tim Leissner at 2-3, *United States* v. *Tim Leissner*, No. 18-439 (MKB) (E.D.N.Y. May 15, 2025), ECF No. 90. And when Goldman Sachs discovered an unauthorized reference letter Mr. Leissner wrote for Mr. Low, Mr. Leissner lied to the firm again, which promptly led to the end of his employment at the firm. *Id.* at 8.

The Government suggests that Mr. Leissner should receive cooperation credit for his "insight" in explaining how he carried out his crimes, including the ways in which he "evaded Goldman control functions" and "willfully evaded internal accounting controls designed to catch and stop corrupt deals from occurring at Goldman." *Id*. at 12. From Goldman's perspective, Mr. Leissner's efforts in this regard are deserving of sanction, not praise. Mr. Leissner's sophisticated scheme to conduct and conceal his crime is what generated criminal liability for Goldman Sachs in the first place. And whatever personal and professional consequences Mr. Leissner may himself have experienced in recent years, those consequences are a natural and direct result of his brazen and audacious criminal conduct, not his cooperation. Simply put, his cooperation was an attempt to mitigate those consequences – not the cause.

Furthermore, we take issue with Mr. Leissner's attempt to explain his misconduct by reference to the supposed pressure that Goldman Sachs put on him to generate business. For one thing, as he testified at trial, Mr. Leissner did not even originally intend for Goldman Sachs to have any role in the 1MDB bond transactions; instead, he secretly pitched them to another bank in an effort to get hired and as part of an undisclosed side business he maintained to further enrich himself. The attempt to blame the industry denigrates the countless law-abiding people who work in it and draws focus from the true motivation for Mr. Leissner's crimes: greed.

Finally, it bears noting that Mr. Leissner has to this day refused to acknowledge the harm he caused to Goldman Sachs and his colleagues. Even after he pleaded guilty in this case, Mr. Leissner opposed Goldman Sachs' efforts to claw back compensation he received while working on the 1MDB bond transactions, even though Goldman Sachs' right to recover that

Honorable Margo K. Brodie
May 21, 2025
Page 3

compensation was stated plainly in Mr. Leissner's employment agreement. Mr. Leissner even made an outlandish counterclaim for millions of dollars in additional compensation for the years in which he engaged in crime, requiring arbitration to confirm his obligation to repay the compensation. Yet Mr. Leissner has still not repaid one penny of that award. He has failed to do so despite the arbitrators' ruling, FINRA rules that require prompt repayment in compliance with that ruling, and the fact that Mr. Leissner has not been required in his criminal case to forfeit any of the compensation he earned while working on the bond transactions.

In short, while Mr. Leissner has admitted to a long list of crimes, he has never acknowledged, let alone accepted responsibility for, the extraordinary harm and reputational damage that he caused to Goldman Sachs and his many partners and colleagues who trusted him. Thank you for your consideration of this letter.

Respectfully submitted,

Kathryn H. Ruemmler
Chief Legal Officer and General Counsel
The Goldman Sachs Group, Inc.