**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
(212) 957 7601 | mcohen@cohengresser.com

**VIA ECF**                                                                                    May 27, 2025

The Honorable Margo K. Brodie, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>*United States v. Leissner*, 18-CR-439 (MKB)</u>

Dear Chief Judge Brodie:

  Xavier Justo respectfully submits this reply in support of his restitution application.[1] Having not disputed the facts of Mr. Justo's claim for his wrongful imprisonment and financial ruin, the parties instead offer misguided legal arguments to escape Mr. Leissner's restitution obligations. Under the relevant law and on the undisputed record, Mr. Leissner could have reasonably foreseen that his coconspirators would obstruct by any means at their disposal any legitimate inquiry that would topple the house of cards he conspired to build and conceal. For the below reasons, Mr. Leissner owes the undisputed loss amounts to Mr. Justo.

  **<u>The MVRA Imposes Broad Restitution for Conspiracies</u>**. The parties do not respond to binding precedent that confirms that the MVRA's causation requirement is satisfied by Mr. Leissner's role in the 1MDB coverup and his sworn knowledge of his coconspirators' means and power to obstruct press and other inquiries. "Under *Boyd*, a participant in a conspiracy may be ordered to pay restitution for harm caused by the acts of his coconspirators done in furtherance of the conspiracy, even though he was not charged with engaging in the specific conduct causing the harm." *United States v. Gushlak*, 2011 WL 782295, at *3 (E.D.N.Y. Feb. 24, 2011) (citing 222 F.3d 47 (2d Cir. 2000)); *accord United States v. Pincus*, 2024 WL 4645686, at *2 (2d Cir. Nov. 1, 2024); *United States v. Smith*, 513 F. App'x 43, 45 (2d Cir. 2013).

  Faced with this precedent, the parties resort to technicalities. Def. 3; Gov. 6. <u>First</u>, the number of times Mr. Justo is mentioned in the information, plea, or at trial does not overcome this body of law. The MVRA authorizes "'restitution to any victim of the offense, even those not named in the criminal indictment.'" *United States v. Grice*, 419 F. App'x 50, 53 (2d Cir. 2011) (quoting *United States v. Grundhoefer*, 916 F.2d 788, 793-94 (2d Cir. 1990)). <u>Second</u>, the indictment's timeframe does not cut off restitution obligations. A district court is "well within [its] discretion to conclude that [a victim's harm] proximately flowed from" "conduct postdating the conspiracy for which [defendant] was convicted." *United States v. Lebedev*, 932 F.3d 40, 57 (2d Cir. 2019) (quoted in Justo 11), *abrogated in part on other grounds by Ciminelli v. United States*, 598 U.S. 306 (2023). The only case cited by the parties on this point—the non-binding decision in *United States v. Morrison*, 685 F. Supp. 2d 339 (E.D.N.Y. 2010)—should not guide this Court because *Morrison* predates the above binding precedent and thus, relying on out-of-Circuit authority, discounts evidence of the ongoing conspiracy. *Id*. 348. Here, controlling law

---

[1] Citations to "Justo," "Def.," and "Gov." refer to ECF 91, 93, and 94, respectively.



The Honorable Margo K. Brodie
May 27, 2025

makes relevant Mr. Leissner's concealment as part of his offenses and his undisputed financial stake in the scheme that he and his coconspirators hid well after 2014—indeed, through 2018. *See* Justo 12 & n. 69; ECF 90 at 7.

**Mr. Justo Is a Victim Under the MVRA**.  Mr. Justo has shown but-for causation.  Justo 12-13.  The government does not deny Mr. Leissner's central role in the 1MDB conspiracy.  And, as described below, Mr. Leissner's concealment of 1MDB-PetroSaudi losses sustained 1MDB's cloak of legitimacy—a necessary factor in bring about the harm to Mr. Justo.  *See United States v. Marino*, 654 F.3d 310, 322-23 (2d Cir. 2011) (cause-in-fact existed when, but-for defendant's role, victims would not have lost).

Instead, the parties try to undercut Mr. Leissner's mandatory restitution duty by supposing—without support—that Mr. Justo's harms resulted from Mr. Leissner's coconspirators hatching a "separate criminal scheme related to the 1MDB bond deals." Gov. 5; *see* Def. 3 n.1.  But the parties cannot dispute the integrated nature of the 1MDB scheme, which ensured that exposure of any individual transaction was a fundamental risk to the entire scheme.  Justo 11.  Even assuming *arguendo* that the related schemes were separate, it makes no difference so long as the losses were reasonably foreseeable to Mr. Leissner.  In *United States v. Goodrich*, the defendant—like the parties here—sought to avoid restitution that he claimed did not result from the public securities offering to which he pled guilty because the related, but distinct, private placement offering was not part of his offense of conviction.  12 F.4th 219, 223 (2d Cir. 2021).  Rejecting this, the Circuit held that the defendant's guilty plea to only the public securities scheme was "not conclusive" of whether he owed restitution for the private placement scheme.  *Id*. 231.  Rather, the "key question" was whether the defendant "knew of, or could have reasonably foreseen, that his participation in the public market scheme would result in the harm to private placement purchasers." *Id*. 232.  *Goodrich* reaffirmed that, under *Boyd*, the "conspiracy *was* part of the defendant's 'offense of conviction,' and therefore, losses flowing from the defendant's co-conspirators' acts *were* 'attributable' to that offense and properly incorporated into the restitution order." *Id*. 228 n.8.

Under the *Goodrich* framework, sufficient evidence supporting proximate cause exists here because, unlike in *Goodrich*, Mr. Leissner "understood the connection" between his offenses of conviction and his coconspirators' efforts to obstruct investigations into 1MDB.  *See id*. 232-33.  The government largely ignores proof that Mr. Leissner directly participated in cover-up efforts that he viewed as key to preserving the conspiracy.  Justo 11-12.  Project Catalyze funds covered PetroSaudi losses, and Mr. Leissner admittedly received loan proceeds that his coconspirators diverted in part to conceal 1MDB-PetroSaudi losses *and* used some of that money to buy jewelry for Prime Minister Najib's wife to curry Najib's favor and continued protection as a participant in the scheme.[2]  And although the government attempts to discount that Mr. Leissner was involved in seeking to overvalue PetroSaudi drillships to conceal the fraud,

---

[2] Excerpted PAC Report, Ex. A, at 89 ($1.50M Catalyze proceeds transferred to Brazen Sky); Compl. ¶¶ 67(c), 72(b) & Tr. 1130:7-14 (Leissner tried to conceal PetroSaudi losses with loan); Tr. 2180:10-15 ($39.75M World Merit deposit for Leissner); *id*. 1255:4-1258:25 (Catalyze proceeds concealing Brazen Sky losses); Justo 4 n.16, 7.



The Honorable Margo K. Brodie
May 27, 2025

Gov. 5 n. 4, he admitted 1MDB hired Lazard after his initial introduction to value drillships that he knew "were linked somehow to PetroSaudi." Tr. 1955:5-25.

Further, Mr. Leissner testified to the pressure the press put on the conspiracy and his reliance on the power of his coconspirators (especially the Prime Minister) to silence inquiries. Justo 4-5. To foster a misimpression that Mr. Leissner could not have reasonably foreseen the losses to Mr. Justo, the government ties itself in knots. <u>First</u>, it mischaracterizes testimony expressly about a 2013 *Sarawak Report* article as if it were about the 2015 *Sarawak Report* article that led to Mr. Justo's arrest ("Heist of the Century"). Gov. 3. But Mr. Leissner's testimony that his coconspirators were discrediting media reports speculating about Goldman's high fees beginning in July 2013—nearly two years prior to "Heist of the Century"—only underscores his awareness of the importance of managing media well before the conspiracy was on the brink of discovery. Tr. 1125:18-1127:10; *see also id.* 1254:1-20 & 1262:16-23 (threatening press "coverage never stopped" following Project Catalyze). <u>Second</u>, the government cannot disavow the import of "Heist of the Century," *see* Gov. 3 n.2, after previously acknowledging the article's role exposing the scheme, spawning additional inquiries and press, and prompting coconspirators' destruction of evidence. *See U.S. v Hwa*, 18-CR-538, ECF 101 at 22-24. <u>Third</u>, the government ignores the import of "Heist" to Mr. Leissner: he needed to minimize "noise around 1MDB" at the time of Mr. Justo's arrest because Mr. Leissner was then pursuing an IPO for 1MDB. Tr. 1130:15-19 (Leissner testifying that "articles and the noise around 1MDB had intensified . . . so much that [the IPO] could not be pursued anymore"). <u>Finally</u>, the government cannot credibly claim that Mr. Leissner could not have reasonably foreseen the risk of injury to Mr. Justo while at the same time requesting leniency for Mr. Leissner based on his willingness to cooperate despite knowing the risk to his personal safety. The government suggests that Mr. Leissner knew that individuals connected to 1MDB were being killed and that his coconspirators had the "means, status, power, and motive to interfere with . . . [his] cooperation" and obstruct investigations. ECF 90 at 13. Nor has the government cited authority requiring a defendant know the identity of the victim and exact extent of harm for his loss to be reasonably foreseeable.

Finally, if the Court requires more, we respectfully request that the Court adjourn restitution and direct the government to investigate this claim, including money transfers by Mr. Leissner's coconspirators contemporaneous with Mr. Justo's arrest. *See* 18 U.S.C. § 3664(d)(5).

**Mr. Justo's Losses Are Undisputed**. No party contests the record on losses submitted by Mr. Justo. The uncontested proof shows by a preponderance that he is entitled to restitution for the full loss amount. Thus, the Court should award restitution for the amount claimed. *See* 18 U.S.C. § 3664(a) (requiring "information sufficient" to support restitution order).

**Conclusion**. For the above reasons, Mr. Justo is entitled to restitution of $18,266,909.31 for losses that were the direct and proximate result of Mr. Leissner's convictions.



The Honorable Margo K. Brodie
May 27, 2025

                                                Respectfully submitted,

                                                **COHEN & GRESSER LLP**

                                                */s/ Mark S. Cohen*
                                                Mark S. Cohen
                                                Oliver Haker
                                                Shannon A. Daugherty
                                                Christine M. Jordan
                                                800 Third Avenue, 21st Floor
                                                New York, NY  10022
                                                Tel:  +1 212 957 7600
                                                mcohen@cohengresser.com
                                                ohaker@cohengresser.com
                                                sdaugherty@cohengresser.com
                                                cjordan@cohengresser.com

                                                *Attorneys for Xavier Justo*