UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                                                         **MEMORANDUM & ORDER**
     – against –                                              18-CR-439 (MKB)

TIM LEISSNER,

                Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        On August 28, 2018, Defendant Tim Leissner pleaded guilty to conspiracy to violate the Foreign Corrupt Practices Act (the "FCPA") in violation of 18 U.S.C. § 371 and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(2). (Min. Entry dated Aug. 28, 2018; Information ¶¶ 46–50, Docket Entry No. 16.) On May 15, 2025, Xavier Justo, a former employee of PetroSaudi,[1] filed a letter seeking restitution from Leissner pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA") and Crime Victims' Rights Act ("CVRA") in the amount of $18,266,909.31, inclusive of (i) $128,500 in costs directly flowing from Justo's unlawful incarceration, (ii) $9,525,726 in lost property, (iii) $1,054.02 in expenses incurred during participation in the 1MDB investigation, and (iv) $8,611,629.29 in pre-judgment interest. (Justo Ltr. 1–2.) Justo claims to have shared "critical documents" with a journalist that led to the exposure of the 1MDB scheme in a February of 2015 article published on *Sarawak Report* (the "2015 Sarawak Report"), and led to one of Leissner's co-conspirators, former

---

[1] PetroSaudi is an oil services company that was involved in a joint venture with 1Malaysia Development Berhad (the "1MDB"). (Justo Ltr. 7, Docket Entry No. 91; Mar. 1, 2022 Ng Trial Tr. 637:6–23, *United States v. Hwa*, No. 18-CR-538, Docket Entry No. 204.)

Malaysia Prime Minister Najib Razak, exercising his influence to ensure Justo's incarceration. (*Id.* at 1, 7, 8–9.) As a result of his incarceration, Justo "was forced to fund a battle for his freedom" and experienced the "loss of his businesses." (*Id.* at 1.) Justo argues that (1) Leissner pleaded to a qualifying offense under the MVRA, and (2) Justo is a victim under the MVRA who was directly and proximately harmed by Leissner's conspiracies. (*Id.* at 9–15.) Justo also argues that he is entitled to restitution for the full amount of his losses, including for his unlawful incarceration, lost business opportunities, the 1MDB investigation expenses, and prejudgment interest, and notes that his losses are undisputed. (*Id.* at 15–22; Justo Suppl. Ltr. 3, Docket Entry No. 96.)

For the reasons discussed below, the Court denies Justo's application.

**I. Discussion**

Justo contends that the MVRA provides for broad restitution in conspiracy cases. (Justo Suppl. Ltr. 1–2.) In support, Justo argues that "the number of times [he] is mentioned in the information, plea, or at trial does not overcome" the Court's ability to grant him restitution under the MVRA and that the Court may award restitution for conduct postdating the conspiracy. (*Id.* at 1.) Justo also argues that he is a victim from losses that were "reasonably foreseeable" to Leissner, that the government has mischaracterized Leissner's trial testimony regarding a Sarawak Report article from 2013, that the government cannot disavow or ignore the importance of the 2015 Sarawak Report, and that the government cannot claim "Leissner could not have reasonably foreseen the risk of injury to . . . Justo while at the same time requesting leniency for . . . Leissner" based on his cooperation despite the personal safety risks. (Justo Suppl. Ltr. 2–3; Justo Ltr. 7.) In the alternative to awarding him restitution, Justo requests the Court adjourn

2

restitution and direct the government to investigate the claim if more information is required. (Justo Suppl. Ltr. at 3.)

Leissner opposes Justo's restitution request because Leissner's crimes of conviction did not directly or indirectly cause Justo's harms. (Leissner Ltr. 1, Docket Entry No. 93.) Leissner argues Justo's harms, such as his incarceration and loss of business are "far afield" of Leissner's crimes of conviction and thus are not contemplated by the MVRA. (*Id.* at 2–3.) Leissner notes that Justo's restitution request is "devoid of direct allegations against [him]" and that Leissner was not convicted or accused of "participating in a retaliatory scheme to imprison" Justo or others. (*Id.* at 3.) Leissner also argues that Justo focuses on conduct in 2015 and 2016 that occurred after the conduct underlying Leissner's conviction ended in 2014. (*Id.* at 3.)

The government argues that the Court should not award restitution to Justo "because his losses do not arise from the specific conduct that is the basis of Leissner's offenses of conviction." (Gov't Ltr. 1, Docket Entry No. 94.) First, the government argues that "[n]othing about Leissner's crimes of conviction indicates that losses to . . . Justo were reasonably foreseeable to Leissner." (*Id.* at 5.) In support, the government argues that Leissner testified at trial that "he lacked personal knowledge about the business relationship between" 1MDB and PetroSaudi and none of the sequence of events Justo describes involved Leissner. (*Id.*) The government notes that Leissner did not mention Justo at trial or during his allocution and did not allocute to any post-2014 conduct. (*Id.* at 2–3.) Second, the government argues that there is insufficient evidence that Leissner's offenses "directly and proximately caused the retaliation for his communications with journalists to [uncover] the 1MDB scheme." (*Id.* at 5–6.) In support, the government argues that, even if a "but-for" causal link existed, Justo has failed to show proximate causation because his incarceration and loss of business opportunities is "too far

3

outside the risks" that Leissner's criminal conduct created. (*Id.* at 6.) The government also argues that Leissner's testimony that he "drew some comfort" from Razak's ability to "diminish or squash" an investigation into the 1MDB scheme does not constitute an admission that he could reasonably foresee Razak colluding to imprison Justo for leaking information to the press. (*Id.* at 6–7.)

The MVRA provides that "the court shall order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1); *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021) (same); *United States v. Petit*, 541 F. Supp. 3d 304, 306–07 (S.D.N.Y. 2021) ("The MVRA applies only in 'sentencing proceedings for convictions of . . . an offense against property under this title [i.e., Title 18].'" (alterations in original) (emphasis and citation omitted)). A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2); *Goodrich*, 12 F.4th at 228 (quoting 18 U.S.C. § 3663A(a)(2)). The court must "identify the 'offense' of conviction" and (2) "ascertain whether the putative 'victim' was 'directly and proximately harmed' by the defendant's commission of that 'offense.'" *Goodrich*, 12 F.4th at 228; *United States v. Calderon*, 944 F.3d 72, 95 (2d Cir. 2019) (explaining that a victim "must have endured a financial loss that was 'directly and proximately' *caused* by a defendant's [crime]"); *United States v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013) (explaining that restitution may only be imposed for losses derived from "the specific conduct that is the basis of the offense of conviction" (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990))); *United States v. Battista*, 575 F.3d 226, 231 (2d. Cir. 2009) ("[I]n determining whether one qualifies as a victim, a sentencing court

can only consider the offense or offenses for which the defendant was convicted."). "Where . . . the offense of conviction is conspiracy, [courts] look to 'the defendant's criminal conduct in the course of' that conspiracy as the basis for restitution," including the "reasonably foreseeable acts of all co-conspirators." *Goodrich*, 12 F.4th at 228; *In re Loc. #46 Metallic Lathers Union & Reinforcing Iron Workers & Its Associated Benefit & Other Funds*, 568 F.3d 81, 87 (2d Cir. 2009) ("While the language [of the MVRA] expands what it is that will give rise to a compensable loss when a scheme, conspiracy or pattern is involved, the reference point to which such conspiracy is tied remains the 'offense' of which the defendant has been convicted.").

Although Justo argues that his incarceration and business losses were caused by Leissner's conspiracy offenses, Justo has not shown that he is a victim of Leissner's offenses of conviction. *Goodrich*, 12 F.4th at 230 (explaining that courts may "look to the materials supporting the plea — such as the allocution statement, the plea agreement, and the indictment — to ascertain the 'offense of conviction' for restitution purposes").

First, Leissner pleaded guilty to conspiracy to violate the FCPA and conspiracy to commit money laundering for conduct occurring between January of 2009 and October of 2014, (Min. Entry dated Aug. 28, 2018; Tr. of Plea Hr'g ("Plea Tr.") 11:23–12:22, 34:1–13, Docket Entry No. 30), and specifically allocuted to participating in a conspiracy to "pay bribes and kickbacks to obtain and then retain business from 1MDB for Goldman Sachs," (Plea Tr. 37:3–6). Leissner did not mention PetroSaudi or Justo during his plea allocution. (*See generally* Plea Tr.) Accordingly, Leissner may be liable for restitution for his conduct during the course of the conspiracy to pay bribes and kickbacks to generate business from 1MDB for Goldman Sachs, as well as the "'reasonably foreseeable acts of all co-conspirators' advancing that plan." *Goodrich*, 12 F.4th at 228; *In re Loc. #46*, 568 F.3d at 87–88 (explaining that the court did not abuse its

discretion in denying a union's motion to enforce its rights as a victim where the plea agreement "barred the [g]overnment from prosecuting [the defendant] for activities related to 'defrauding union benefit funds'" and it was "therefore clear that the offense of conviction was not conspiracy to defraud the union" but was solely "to engage in money laundering").

Second, Justo's incarceration and loss of business were not caused by Leissner's offenses of conviction or the reasonably foreseeable acts of his co-conspirators in advancing the plan to generate business from 1MDB for Goldman Sachs. *See Goodrich*, 12 F.4th at 232 (explaining that proximate cause under the MVRA is assessed "based on whether losses are 'foreseeable' to a defendant"); *Vilar*, 729 F.3d at 97 (explaining that "Congress has 'authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction'" and that "restitution is not permitted for loss caused by 'relevant conduct'"). Although Leissner testified that he "drew some comfort" from the fact that Razak could "diminish or squash any kind of investigation" that "outweighed the concerns of the press," (Feb. 24, 2022 Ng. Trial Tr. 1124:6–23, *United States v. Hwa*, No. 18-CR-538), there is no evidence Leissner knew "anything about PetroSaudi or the 1MDB joint venture," (Feb. 22, 2022 Ng. Trial Tr. 648:12–26, *United States v. Hwa*, No. 18-CR-538), or that he could reasonably foresee Razak exerting his influence to incarcerate Justo for providing information about PetroSaudi and 1MDB to journalists. Accordingly, Justo's losses as a result of his incarceration and business losses were not foreseeable to Leissner, and therefore Justo is not entitled to restitution from Leissner. *Goodrich*, 12 F.4th at 231–32 (finding that the government failed to show private placement victims' harm was caused by the defendant's conspiracy to manipulate a company's public share price where the record "contain[ed] too little evidence suggesting that [the defendant] knew of, or could have reasonably foreseen, that his participation in the public market scheme would

6

result in the harm to private placement purchasers"); *Calderon*, 944 F.3d at 84, 96 (finding that the banks were not "victims" entitled to restitution under the MVRA because the defendant's fraudulent shipping documents did not proximately cause the bank's losses in a wire and bank fraud conspiracy). *Cf. Battista*, 575 F.3d at 231 (finding that a basketball association was "directly and proximately harmed" by the defendant's wagering conspiracy because the defendant used the association's nonpublic information conveyed by his co-conspirators to place illegal wagers); *United States v. Paul*, 634 F.3d 668, 677–78 (2d Cir. 2011) (finding that the court did not abuse its discretion in ordering restitution for the brokers' losses where the defendant admitted at his plea allocution that the loans were a "significant part of the greater fraud" because "[t]he brokerage houses would not have made the loans to [the defendant] had they known that the collateral for the loans was the stock he manipulated through the nominee accounts").

## II.  Conclusion

In sum, Justo is not a "victim" entitled to restitution under the MVRA, and the Court therefore denies his restitution claim.

Dated: May 29, 2025
       Brooklyn, New York

                                  SO ORDERED:

                                        s/ MKB
                                MARGO K. BRODIE
                                United States District Judge